IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CADENCE BANK f/k/a BANCORPSOUTH BANK and CENTURY BANK,<br><br>Plaintiffs,<br><br>v.<br><br>BRIDGELINK ENGINEERING, LLC; COLE WAYNE JOHNSON, CORD HENRY JOHNSON, BIGHORN CONSTRUCTION AND RECLAMATION, L.L.C.; BIGHORN SAND & GRAVEL LLC, BIGHORN INVESTMENTS AND PROPERTIES, LLC,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  Civil Action No 4:23-CV-00609-BJ |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Cadence Bank f/k/a BANCORPSOUTH BANK ("Cadence") and Century Bank ("Century" and collectively with Cadence, the "Banks") hereby file this Brief in Support of Motion for Summary Judgment (the "Motion") against Bridgelink Engineering, LLC (the "Bridgelink"), Cole Wayne Johnson ("Cole Johnson"), Cord Henry Johnson ("Cord Johnson"), Bighorn Construction and Reclamation, L.L.C. ("Bighorn Construction"), Bighorn Sand & Gravel, LLC ("Bighorn Sand"), Bighorn Investments and Properties, LLC ("Bighorn Investments" and collectively with Cole Johnson, Cord Johnson, Bighorn Construction and Bighorn Sand, the "Guarantors") in accordance with Federal Rule of Civil Procedure 56 and Rule 56.5 of the Local Rules of the United States District Court for the Northern District of Texas.

## I.     OVERVIEW AND SUMMARY OF MOTION

1.     On August 6, 2021, Bridgelink and the Banks entered into a Credit Agreement (the "Credit Agreement").  Pursuant to the Credit Agreement, Bridgelink executed separate revolving Loan Notes (the "Notes") to the Banks.

2.     Bridgelink's obligations under the Credit Agreement and Notes were guaranteed by the Guarantors pursuant to Guarantee Agreements (the "Guarantees") executed on August 6, 2021, and March 29, 2022.

3.     The Notes are in default.  Despite demand, neither Bridgelink nor the Guarantors have paid the amounts due to the Banks under the Credit Agreement and Notes.  As a result, the Banks filed this lawsuit.

4.     The Banks are entitled to judgment against Bridgelink because the Banks can prove each element of their claims for breach of the Notes.  *See* Fed. R. Civ. P. 56(a).  Additionally, the Banks are entitled to judgment against the Guarantor because the Banks can prove each element of their claims for breach of Guarantees.  *See* Fed. R. Civ. P. 56(a).

## II.     SUMMARY JUDGMENT EVIDENCE

5.     The Banks rely on the pleadings on file with this Court, as well as the following exhibits and attachments to this Motion, each of which is incorporated by reference:

Exhibit A:     Affidavit of Colton Poindexter, with the following attachments (Exhibits A-1 to A-8)

Exhibit A-1:     Credit Agreement dated August 6, 2021, executed by the Banks as Lenders, and Bridgelink, as borrower, under which Bridgelink borrowed $34,000,000.00 from the Banks.

Exhibit A-2:     Revolving Loan Note dated August 6, 2021, executed by Bridgelink and delivered to Cadence in the principal amount of $20,000,000.00.

Exhibit A-3:     Revolving Loan Note Dated August 6, 2021, executed by Bridgelink and delivered to Century in the principal amount of $14,000,000.00.

<table>
<tr><td>Exhibit A-4:</td><td>Guarantee Agreement between Bridgelink, Bighorn Construction, Bighorn Sand, and Bighorn Investments and Cadence as administrative agent dated August 6, 2021.</td></tr>
<tr><td>Exhibit A-5:</td><td>Guarantee Agreement between Bridgelink, Cole Johnson, Cord Johnson, and Cadence as administrative agent dated March 29, 2022.</td></tr>
<tr><td>Exhibit A-6:</td><td>Notice of Default and Demand for Payment dated January 27, 2023.</td></tr>
<tr><td>Exhibit A-7:</td><td>Notice of Default and Demand for Payment dated February 8, 2023.</td></tr>
<tr><td>Exhibit A-8:</td><td>Notice of Default and Demand for Payment dated March 2, 2023.</td></tr>
<tr><td>Exhibit B:</td><td>Declaration of Blake Rasner, with the following attachment (Exhibit B-1).</td></tr>
<tr><td>Exhibit B-1:</td><td>Attorneys' Fees Invoices from Haley Olsen PC.</td></tr>
<tr><td>Exhibit C:</td><td>Declaration of John Leininger, with the following attachment (Exhibit C-1).</td></tr>
<tr><td>Exhibit C-1:</td><td>Attorneys' Fees Invoices from Otteson Shapiro LLP</td></tr>
</table>

The live pleadings in this case that are relevant to this Motion are Plaintiffs' Complaint and the Defendants' Answer.

### III.    UNDISPUTED FACTS

**A.    Execution of the Credit Agreement and Notes.**

6.    On August 6, 2021, Bridgelink, as borrower, and the Banks, as lenders, entered into the Credit Agreement.  *See* Ex. A, ¶ 5; Ex. A-1 (App. 011 – 199).  Pursuant to the Credit Agreement, on August 6, 2021, Bridgelink, as borrower, executed and delivered the Notes to Cadence Bank and Century Bank.  *See* A, ¶ 6; Ex. A-2 and A-3 (App. 200 - 207).

7.    Pursuant to the Credit Agreement and the Notes, Bridgelink borrowed the principal amount of $20,000,000.00 from Cadence and $14,000,000.00 from Century.  *See* Ex. A, ¶ 7.

8. Pursuant to the Credit Agreement, Bridgelink was obligated to make quarterly interest payments to Cadence.  *See* Ex. A, ¶ 9; Ex. A-1 (App. 068)[1].

9. The Credit Agreement provides that Bridgelink's failure to make an interest payment when due is an event of default.  *See* Ex. A at ¶ 10; A-1 (App. 106)[2].

10. On August 6, 2021, Bridgelink, Bighorn Construction, Bighorn Sand, and Bighorn Investments signed a Guarantee Agreement.  *See* Ex. A at ¶ 8; Ex. A-4 (App. 208 – 221).  On March 29, 2022, Bridgelink, Cole Johnson, Cord Johnson signed a Guarantee Agreement.  *See* Ex. A at ¶ 8; Ex. A-5 (App. 222 – 238).  The Guarantees, each provide, that the guarantors each "absolutely, unconditionally and irrevocably guarantees, jointly with the other Guarantors and severally, as a primary obligor and not merely as a surety."  *See* Ex. A at ¶ 8; A-4 (App. 212)[3] and A-5 (App. 226)[4].

11. The Guarantees further provide that they are "a guarantee of payment when due and not of collection."  *See* Ex. A at ¶ 8; A-4 (App. 212)[5] and A-5 (App. 226)[6].

12. The Banks are the current owners and holders of the Credit Agreement, the Notes, and the Guarantees.  *See* Ex. A at ¶ 16.

**B.   Default Under the Credit Agreement and Breach of the Guarantees.**

13. Bridgelink defaulted on its obligations to the Banks by failing to tender the interest payments due on or before December 31, 2022, and March 31, 2023.  *See* Ex. A, ¶ 11.

---

[1] Section 3.1(c) of the Credit Agreement requires payment of interest on the Interest Payment Date, which is defined in Section 1.1 of the Credit Agreement (Ex. A-1, App. 41) as "the last day of each March, June, September and December."
[2] Section 8.1(b).
[3] Section 2.1.
[4] Section 2.1.
[5] Section 2.2.
[6] Section 2.2.

14.     By letters dated January 27, 2023, February 8, 2023, and March 2, 2023, Cadence sent Bridgelink and the Guarantors notice of Bridgelink's defaults. *See* Ex. A, ¶ 12; Exs. A-6, A-7, A-8 (App. 239 - 276). To date, Bridgelink has not paid the amounts due and owing to the Banks in full. *See* Ex. A, ¶ 13.

15.     As of March 14, 2024, the principal interest and charges due to Cadence on account of the Credit Agreement and Notes are $23,151,723.80. *See* Ex. A, ¶ 14. As of the date hereof, the principal interest and charges due to Century on account of the Credit Agreement and Notes are $15,333,491.44. *See* Ex. A, ¶ 14.

16.     Pursuant to the Guarantees, the Banks are entitled to collect from the Guarantors all of the amounts owed by Bridgelink, as well as the costs of collection, including attorneys' fees. *See* Exs. A-4 (App. 212) and A-5 (App. 226)[7].

### C.     The Lawsuit.

17.     On June 15, 2023, the Banks filed suit against Bridgelink and the Guarantors for breach of the Credit Agreement, Notes, and Guarantees (the "Lawsuit"). *See* Dkt. No. 1.

18.     On August 17, 2023, Bridgelink and the Guarantors filed their Answer in the Lawsuit. *See* Dkt. No. 10.

### D.     The Banks' Damages.

19.     As of March 14, 2024, a balance of $23,151,733.80 remains due and owing to Cadence. *See* Ex. A, ¶ 14.

---

[7] The Guarantees each obligate the Guarantors to pay the "Guaranteed Obligations." Section 1.1 of the Guarantees define the "Guaranteed Obligations" as the "Secured Obligations." Section 1.1 of the Guarantees further provides that capitalized terms not defined in the Guarantees shall have the meaning given to them in the Credit Agreement. The Credit Agreement defines "Secured Obligations" to include the "Loan Document Obligations," which the Credit Agreement defines to include "all costs and expenses incurred in connection with enforcement and collection of the foregoing, including the fees, charges and disbursements of counsel, in each case whether direct or indirect." Ex. A-1; App. 044.

20. As of March 14, 2024, a balance of $15,833,491.44 remains due and owing to Century. *See* Ex. A, ¶ 14.

21. Interest on the amount owed to Plaintiffs continues to accrue interest at $10,915.30 per diem. *See* Ex. A, ¶ 15.

22. Despite demand, neither Bridgelink nor the Guarantors have paid the amounts due and owing to the Banks. *See* Ex. A, ¶ 13.

## IV.    ARGUMENT AND AUTHORITY

### A.    Summary Judgment Standard.

23. Summary judgment is appropriate when the movant establishes that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). This standard requires the moving party to establish every essential element of its claim or defense. *Upjohn Co.*, 780 F.2d 1194. The movant, however, has no burden to negate or disprove matters on which the non-movant will have the burden of proof at trial. *Celotex Corp v. Catrett*, 477 U.S. 317 (1985). Stated otherwise, the movant discharges his burden by "showing — i.e., pointing out to the Court — that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Thus, under Rule 56, a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of pleading but must set forth specific facts showing that there is a genuine issue for trial. This requires the opposing party to present affirmative evidence in order to defeat a properly supported motion for summary judgment:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

24.     Based on the summary judgment evidence, Bridgelink has breached its payment obligations under the Credit Agreement and is in default and the Guarantors are in default under the Guarantees as a matter of law. As a result, the Banks are entitled to summary judgment against Bridgelink and the Guarantors for the amounts due and owing under the Credit Agreement, the Notes, and the Guarantees.

B.      **Breach of the Credit Agreement.**

25.     To collect on a promissory note, the holder or payee must establish that: (1) there is a note; (2) it is the legal owner and holder of the note; (3) the defendant is the maker of the note; and (4) a certain balance is due and owing on the note. *Commercial Services of Perry, Inc. v. Wooldridge*, 968 S.W.2d 560, 564 (Tex. App. – Fort Worth 1998, no pet.). In this case, the Banks can prove each element of their claims for breach of the Credit Agreements and Notes as a matter of law and, are therefore, entitled to summary judgment.

26.     The summary judgment evidence shows that the Banks entered into the Credit Agreement and Notes with Bridgelink. *See* Exhibits A at ¶ 5, A-1, A-2, and A-3. The Banks are the legal owners and holders of the Credit Agreement and Notes. *See* Exs. A; ¶ 16. Bridgelink is the maker of the Loans. *See* Exhibits A at ¶ 5, A-1, A-2 and A3. Finally, there is a balance due and owing by Bridgelink. *See* Ex. A at ¶ 14. Based on the foregoing summary judgment evidence, the Banks are entitled to summary judgment on their claims against Bridgelink for breach of the Credit Agreement and Notes.

C.      **Breach of the Guarantees.**

27.     A breach of guaranty claim has four elements: (1) the existence and ownership of a guaranty contract; (2) the terms of the underlying contract; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform by the guarantor. *Fernandez*

*v. Independent Bank*, 2021 WL 4621758 at *2 (Tex. App. – Fort Worth Oct. 7, 2021, no pet.) (mem. op.).  In this case, the Banks can establish each element of its claims for breach of guaranty as a matter of law and, is therefore, entitled to summary judgment against the Guarantors.

28. The summary judgment evidence establishes that the Guarantors guaranteed Bridgelink's obligations under the Credit Agreement and the Notes pursuant to the Guarantees.  *See* Exs. A-4 and A-5.  The Banks are the owners of the Guarantees.  *See* Ex. A ¶ 16.  The terms of the underlying contracts are set forth in the Credit Agreement and Notes.  *See* Exs. A-1, A-2, and A-3.  Bridgelink defaulted under the terms of the Credit Agreement and Notes by failing to make payments when due.  *See* Ex. A at ¶ 11  Since Bridgelink's default, the Guarantors have failed to pay the amounts due and owing on the Credit Agreement and Notes.  *See* Ex. A at ¶ 13.  Based on the foregoing summary judgment evidence, the Banks are entitled to summary judgment on its claims against the Guarantors for breach of the Guarantees.

**D.     The Banks Are Entitled to Attorneys' Fees and Costs.**

29. Under the terms of the Credit Agreement, Bridgelink agreed to pay all costs of collection, including reasonable attorneys' fees.  Under the terms of the Guarantees, the Guarantors agreed to pay all "Secured Obligations[8]," which includes "the fees, charges and distributions of counsel." Additionally, because this is a suit on a written contract, the Banks are entitled to attorneys' fees under Texas Civil Practices & Remedies Code § 38.001(8).

30. Cadence was required to retain the services of Haley & Olsen P.C. to collect the indebtedness owed to it by Bridgelink and the Guarantors.  Century was required to retain the services of Otteson Shapiro, LLP to collect the indebtedness owed to it by Bridgelink and the Guarantors.

---

[8] See FN 7, *supra*.

31. The summary judgment evidence establishes the attorneys' fees incurred by the Banks in this matter and that fees were reasonable and necessary as a matter of law. *See* Exs. B, B-1, C and C-1. Through February 29 2024, the Banks have incurred reasonable attorney fees, costs, and expenses in the amount of $427,606.41. *See* Exs. B, C, B-1, and C-1 (App. 282 - 375)

32. Accordingly, this Court should grant the Motion for Summary Judgment on the Banks' claim for attorneys' fees, costs, and expenses in the amount of $427,606.41.

## V.   POST JUDGMENT INTEREST

33. The Banks are entitled to post-judgment interest on all judgment amounts pursuant to the rate fixed by federal law.

Plaintiffs pray that this Court grant summary judgment in favor of the Banks and against Bridgelink and the Guarantors and for such other and further relief to which the Banks show themselves entitled, including all reasonable and necessary attorneys' fees and costs incurred in bringing this lawsuit.

Respectfully submitted,

**OTTESON SHAPIRO LLP**

By: */s/ John C. Leininger*
    John C. Leininger
    Texas Bar No. 24007544
    jcl@os.law

4851 Lyndon B Johnson Freeway, Suite 650
Dallas, Texas 752404
Telephone: (214) 619-8325

**ATTORNEYS FOR PLAINTIFF CENTURY BANK**

and

**HALEY & OLSON PC**

    Blake Rasner
    Texas Bar No. 16555700
    brasner@haleyolson.com
    David Shaw
    Texas Bar No. 24084641
    dshaw@haleyolson.com
    Marshall Grant Jones
    Texas Bar No. 24131891
    grant.jones@haleyolson.com

100 N. Ritchie Road, Suite 200
Waco, Texas 76712

**ATTORNEYS FOR CADENCE BANK**

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 1st day of April, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: */s/ John C. Leininger*
    John C. Leininger