IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **CADENCE BANK F/K/A** § <br> **BANCORPSOUTH BANK and** § <br> **CENTURY BANK,** § <br> § <br> **Plaintiffs,** § <br> § <br> v. § <br> § <br> **BRIDGELINK ENGINEERING, LLC,** § <br> **COLE WAYNE JOHNSON, CORD** § <br> **HENRY JOHNSON, BIGHORN** § <br> **CONSTRUCTION AND** § <br> **RECLAMATION, L.L.C., BIGHORN** § <br> **SAND & GRAVEL LLC, AND** § <br> **BIGHORN INVESTMENTS AND** § <br> **PROPERTIES, LLC,** § <br> § <br> **Defendants.** § | | **Civil Action No. 23-cv-00609** |

**DEFENDANTS' BRIEF IN SUPPORT OFR RESPONSE TO MOTION FOR SUMMARY JUDGEMENT**

**DEFENDANTS' BRIEF IN SUPPORT OF RESPONSE
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants, Bridgelink Engineering, LLC (the "Bridgelink"), Cole Wayne Johnson ("Cole Johnson"), Cord Henry Johnson ("Cord Johnson"), Bighorn Construction and Reclamation, L.L.C. ("Bighorn Construction"), Bighorn Sand & Gravel, LLC ("Bighorn Sand"), Bighorn Investments and Properties, LLC ("Bighorn Investments") (collectively "Defendants") in the above styled and numbered cause of action, and files this, their Brief in Support of Response to Plaintiffs' Motion for Summary Judgment, and, in support of same, would respectfully show the following:

1

# I
# SUMMARY & GENUINE ISSUES OF MATERIAL FACT

1. Plaintiffs are not entitled to summary judgment pursuant to Fed. R. Civ. P. 56(a).

2. Multiple genuine issues of material fact exist as to Plaintiffs' requested relief:

    - Whether Defendants met the requirements of Section 9.3 Release of Guarantors of the Guarantee Agreement, resulting in the contractual release of the individual guarantees;

    - Whether Defendants forwarded two (2) quarters of Certificates of Compliance commencing with the first quarter ending March 31, 2022;

    - Whether the Certificates were acknowledged by the Plaintiffs;

    - Whether there was an accordion feature in the Banks' loans;

    - Whether the Banks refused to allow exercise of the loan accordion feature by Bridgelink;

    - Whether the Banks performed under the loan contracts; and

    - Whether this refused to allow exercise of the loan accordion feature by Bridgelink constitutes a first breach of the contract

3. Existence of multiple genuine issues of material fact precludes any grant of summary judgment. The Court should deny Plaintiffs' motion.

# II
# FACTUAL BACKGROUND

4. Originally, Defendants approached BankcorpSouth Bank ("Bankcorp") to obtain funding in the amount of $60 million in order to fund projects and operations. *See* Ex. A, App. 1.

5. After going back and forth, Defendants ultimately closed with $34 million in funding, in which $20 million came from BankcorpSouth and $14 million from Century Bank, with an option

to exercise an accordion feature at any time to obtain the remaining $26 million. *See* Ex. A, App. 1.

6.      Prior to the closing, there were no Personal Guarantees ("PGs") on any of the funding as evident from the email communications between BankcorpSouth and Defendants. *See* Ex. A, App. 1; *see also* Ex. A-1.

7.      On or around August 6, 2021, Defendants, BankcorpSouth and Century Bank entered into the Original Credit Agreement ("Credit Agreement"). *See* Ex. A, App. 1; *see also* Ex. A-2.

8.      In the first Quarter of the Credit Agreement Defendants were in compliance. *See* Ex. A, App. 1..

9.      During September and October of 2021, when Defendants sought to exercise the accordion feature of the Credit Agreement, BankcorpSouth informed Defendants that BankcorpSouth was reaching out to lenders, and some were showing interest in lending to Defendants. *See* Ex. A, App. 2; *see also* Ex. A-4, A-5.

10.     BankcorpSouth informed Defendants that Community Bank of Texas was interested in an email dated September 3, 2021, but nothing came to fruition and BankcorpSouth failed to exercise the accordion. *See* Ex. A, App. 2; *see also* Ex. A-4.

11.     BankcorpSouth informed Defendants that Veritax Bank and Trustmark Bank were interested in an email dated September 21, 2021, but nothing came to fruition and BankcorpSouth failed to exercise the accordion. *See* Ex. A, App. 2; *see also* Ex. A-5.

12.     On September 16, 2021 BankcorpSouth reached out to the Defendants for an in-person meeting to have dinner and drinks on September 30, 2021, and lunch the following day along with Keith Miller from Century Bank. *See* Ex. A, App. 2; *see also* Ex. A-6.

13.     On September 23, 2021, BankcorpSouth informed the Defendants that due to the acquisition by Cadence Bank the original scheduled meeting would need to be rescheduled. *See* Ex. A, App. 2; *see also* Ex. A-7.

14.     BankcorpSouth met with Defendants on October 7, 2021 where Defendants discussed with BankcorpSouth the importance of the accordion features, as further evidence by a follow-up email on October 12, 2021 from Defendants, but nothing came to fruition and BankcorpSouth failed to follow through with the exercise of the accordion. *See* Ex. A, App. 2-3; *see also* Ex. A-8.

15.     On October 22, 2021 BankcorpSouth emailed the Defendants in an effort to delay Defendants from meeting with bank groups that could fund the accordion features, suggesting to wait till the first week of November. *See* Ex. A, App. 3; *see also* Ex. A-9.

16.     On October 28, 2021, Defendants introduced to BancropSouth a Commercial Relationship Manager from Regions Bank named Kyle Sederstrom in order to begin discussion for Regions Bank participating in the accordion feature. *See* Ex. A, App. 3; *see also* Ex. A-10.

17.     On December 22, 2021, BankcorpSouth a division of Cadence Bank, Century Bank, and Defendants entered into its First Amended Credit Agreement to waive the requirement for Defendants to obtain a third-party review of the percentage of completion accounting. *See* Ex. A, App. 3; *see also* Ex. A-11.

18.     Representatives from BankcorpSouth informed Defendants that they were instructed internally not to make any changes to the credit agreements even though they were in compliance. *See* Ex. A, App. 3.

19.     Sometime on or around March 9, 2021, BankcorpSouth emailed Defendants to discuss waiving the December 31, 2021, minimum liquidity by establishing PGs that would release after

two consecutive borrow basses starting with the fiscal quarter ending on March 31, 2022. *See* Ex. A, App. 3; *see also* Ex. A-12.

20. Sometime around March 29, 2022, because Defendants were not in technical compliance for the fiscal quarter ending on December 31, 2021, which was not due to a missed payment but rather for failure of having $4 million in liquidity Defendants Cord Johnson ("Cord") and Cole Johnson ("Cole") agreed to PGs, which would roll off given compliance for two consecutive quarters beginning with the quarter ending in March 31, 2022. *See* Ex. A, App. 3-5; *see also* Ex. A-10.

21. Defendants and BankcorpSouth entered into a Second Amended Credit Agreement dated March 29, 2022 and a Guarantee Agreement dated March 29, 2022 to reflect the agreement for the PGs, which is further supported by an email from BankcorpSouth. *See* Ex. A, App. 4; *see also* Ex. A-12.

22. Section 9.3 Release of Guarantors clearly states that the PGs P are to roll off after two consecutive quarters of compliance. *See* Ex. A, App. 4; *see also* Ex. A-12.

23. On or around May 4, 2022, Defendants made yet another request to exercise the accordion feature but were denied because of a requirement of a field audit, however, the field audit was sent to BankcorpSouth to review. *See* Ex. A, App. 4; *see also* Ex. A-15.

24. On or around May 13, 2022, Defendants sent to BankcorpSouth a copy of the compliance certificate via email for the fiscal quarter ending on March 31, 2022. *See* Ex. A, App. 4; *see also* Ex. A-16.

25. On or around July 22, 2022, BankcorpSouth confirmed receipt of the compliance certificate from the fiscal quarter ending on March 31, 2022. *See* Ex. A, App. 4; *see also* Ex. A-17.

26.     On or around August 15, 2022 Defendants sent to BankcorpSouth a copy of the compliance certificate via email for the fiscal quarter ending on June 30, 2022. *See* Ex. A, App. 4; *see also* Ex. A-18.

27.     On or around August 15, 2022, BankcorpSouth confirmed receipt of the compliance certificate from the fiscal quarter ending on June 30, 2022. *See* Ex. A, App. 5; *see also* Ex. A-19.

28.     At this point there were two (2) consecutive fiscal quarters in compliance and BankcorpSouth failed to drop the PGs. *See* Ex. A, App. 5

29.     After the BankcorpSouth and Cadence acquisition was completed and the transition period was over, the representatives working with the Defendants were weeks from leaving the bank or moving departments, leaving Defendants stranded and with no help to support the daily operations from a banking perspective. *See* Ex. A, App. 5. This caused weeks and months of delays for simple request such as cashed back letters of credits, resulting in us having to reach out to other banks to support the letter of credits. *See* Ex. A, App. 5

30.     Plaintiffs mislead Defendants with false support throughout the relationship ultimately leading to Defendants inability to operate correctly. During the course of the relationship, BancorpSouth failed to: (1) exercise the accordion feature after multiple requests and even introducing introductions by Defendants to banks willing to support the line of credit; (2) provide purchase cards, which Plaintiffs promised they would provide to Defendants; (3) provide cash backed letters of credit upon requests by Defendants; and (4) operate an escrow agreement. *See* Ex. A, App. 5.

### III
### STANDARD

31.     Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 371, 323 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Williams v. Adams,* 836 F.2d 958, 960. (5th Cir. 1988).

32. When parties offer conflicting evidence on a point creating a factual dispute, the issue cannot be resolved at the summary judgment stage. *Roark v. Peabody* 959 F.Supp. 379, 387 (N.D. Tex. 1997). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990); *Anderson,* 477 U.S. at 255.

## IV
## PLAINTIFFS' FAILURE TO PERFORM UNDER THE ACCORDION FEATURE

33. Plaintiffs simply rote recite that they have performed under the loan contracts. However, nothing could be further from the truth. Originally Defendants approached Plaintiff Cadence Bank, f/k/a, BankcorpSouth to obtain funding in the amount of $60 million. *See* Ex. A-01, App. 1. After going back and forth, Plaintiff BankcorpSouth and Defendants ultimately closed with $34 million in funding, in which $20 million came from Plaintiff BankcorpSouth and $14mm from Century Bank, with an option to exercise an accordion feature to obtain the remaining $26 million in order to receive the full $60 million that was sought. *See* Ex. A, App. 1. The accordion feature was to provide Defendants additional funds to fund ongoing projects and operations. *See* Ex. A, App. 1. However, upon request, the Banks told Defendants that they would not lend the second tranche of the loan pursuant to the accordion feature. *See* Ex. A, App. 3. Without the remaining

funds, Defendants were unable to fund the projects and operations which resulted in the projects failing to come to fruition and generate revenue to help repay the loan from the Banks.

34. The essential elements of a breach of contract cause of action are: 1) the existence of a valid, enforceable contract; 2) plaintiff's performance; 3) defendant's breach; and 4) causation of damages sustained. *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019); *Turner v. Ewing*, 625 S.W.3d 510, 518 (Tex. App.–Houston [14th Dist.] 2020, pet. denied); *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.–Houston [1st Dist.] 2001, no pet.); *Conn Credit I, L.P. v. TF Loanco III, L.L.C.*, 903 F.3d 493 (5th Cir. 2018).

35. When a plaintiff repudiates a dependent promise or materially breaches the contract, the defendant can assert the defense that it was discharged from performing the remainder of the contract. *Bartush-Schnitzius Foods Co. v. Cimco Refigeration, Inc.,* 518 S.W.3d 432, 436 (Tex. 2017); *see also General Growth Props., Inc. v. Prop. Tax Mgmnt.*, 61 S.W. 3d 386, 392-93 (Tex. App.–Houston [14th Dist.] 2020, no pet.). A party that does not perform its obligations cannot enforce the remaining terms of the contract against the other party and a defendant can recover damages incurred by an inadequately performing plaintiff. *Bartush-Schnitzius Foods,* 518 S.W.3d at 436-37.

36. However, Plaintiffs actually breached the loan contracts.  A breach of a contract is a failure, without legal excuse, to perform a promise that forms all or part of an agreement, the refusal to recognize the existence of an agreement, or the doing of something inconsistent with the agreement's existence. *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.–Houston [1st Dist.] 2009, pet. denied); *Bernal v. Garrison*, 818 S.W.2d 79, 83 (Tex. App.–Corpus Christi 1991, writ denied); *DeSantis v. Wackenhut Corp.*, 732 S.W.2d 29, 34 (Tex. App.–Houston [14th Dist.] 1987), *rev'd in part on other grounds*, 793 S.W.2d 670 (Tex. 1990).  A party breaches a

contract by neglecting or refusing to perform its contractual obligation. *Tennessee Gas Pipeline Co. v. Lenape Resources Corp.*, 870 S.W.2d 286, 302 (Tex. App.–San Antonio 1993), *rev'd in part on other grounds*, 925 S.W.2d 565 (Tex. 1996); *Townewest Homeowners Ass'n v. Warner Communication Inc.*, 826 S.W.2d 638, 640 (Tex. App.–Houston [14th Dist.] 1992, no writ). A party also breaches its contract by voluntarily acting to make its performance of contractual obligations impossible. *Stephenson v. Calliham*, 60 S.W.2d 805, 807 (Tex. App.–Beaumont 1933, writ ref'd); *Arlington Heights Realty Co. v. Citizens' Ry. & Light Co.*, 160 S.W. 1109, 1120 (Tex. App.–Amarillo 1913, no writ).

37. During September and October of 2021, when Defendants sought to exercise the accordion feature of the Credit Agreement, BankcorpSouth informed Defendants that BankcorpSouth was reaching out to lenders, and some were showing interest in lending to Defendants. *See* Ex. A, App. 5; *see also* Ex. A-4 and A-5...

38. BankcorpSouth informed Defendants that Community Bank of Texas was interested in an email dated September 3, 2021, but nothing came to fruition and BankcorpSouth failed to exercise the accordion. *See* Ex. A, App. 2; *see also* Ex. A-4. BankcorpSouth informed Defendants that Veritax Bank and Trustmark Bank were interested in an email dated September 21, 2021, but nothing came to fruition and BankcorpSouth failed to exercise the accordion *See* Ex. A, App. 2; *see also* Ex. A-5.

39. On September 16, 2021 BankcorpSouth reached out to the Defendants for an in-person meeting to have dinner and drinks on September 30, 2021, and lunch the following day along with Keith Miller from Century Bank. *See* Ex. A, App. 2; *see also* Ex. A-6.

9

40. On September 23, 2021, BankcorpSouth informed the Defendants that due to the acquisition by Cadence Bank the original scheduled meeting would need to be rescheduled. *See* Ex. A, App. 2; *see also* Ex. A-7.

41. BankcorpSouth met with Defendants on October 7, 2021 where Defendants discussed with BankcorpSouth the importance of the accordion features, as further evidence by a follow-up email on October 12, 2021 from Defendants, but nothing came to fruition and BankcorpSouth failed to follow through with the exercise of the accordion *See* Ex. A, App. 2-3; *see also* Ex. A-8.

42. On October 22, 2021 BankcorpSouth emailed the Defendants in an effort to delay Defendants from meeting with bank groups that could fund the accordion features, suggesting they wait until the first week of November to attempt same. *See* Ex. A, App. 3; *see also* Ex. A-9. On October 28, 2021, Defendants introduced to BancropSouth a Commercial Relationship Manager from Regions Bank named Kyle Sederstrom in order to begin discussion for Regions Bank participating in the accordion feature. *See* Ex. A, App. 3; *see also* Ex. A-10. On December 22, 2021, BankcorpSouth a division of Cadence Bank, Century Bank, and Defendants entered into its First Amended Credit Agreement to waive the requirement for Defendants to obtain a third-party review of the percentage of completion accounting. *See* Ex. A, App. 3; *see also* Ex. A-11.

43. Plaintiffs refused to allow exercise of the accordion feature of the loan, a material term of the agreement. Furthermore, Plaintiffs were absolutely aware of the importance of this feature and need for Defendants to obtain the second tranche of the loan in order to finish their project. Defendants' failure to perform nullifies an essential element of their breach of contact cause of action. Plaintiffs are not entitled to summary judgment.

44. Accordingly genuine issues of material facts exist as to: whether there was an accordion feature in the Banks' loans; whether the Banks refused to allow exercise of the loan accordion

feature by Bridgelink; whether the Banks performed under the loan contracts; and whether this refusal to allow exercise of the loan accordion feature by Bridgelink constitutes a first breach of the contract. Plaintiffs are not entitled to summary judgment. The Court should deny the motion in its entirety.

## V
## RELEASE OF PGS

45. Plaintiffs studiously avoid mentioning the section of the loan documents providing for a release of all PGs. The Guarantee Agreement entered into by the Defendants and Plaintiffs on March 29, 2022 clearly states that the PGs would no longer be in effect so long as the Defendants can show two (2) consecutive fiscal quarters of compliance beginning on March 31, 2022. *See* Ex. A, App. 3-4; *see also* Ex. A-14. The PGs were originally put in place because of a minor issue with Defendants liquidity in the amount, in which Plaintiffs offered up a solution as clearly outlined in their communications with Defendants. *See* Ex. A, App. 3; *see also* Ex. A-14.. Despite meeting the requirements to release the PGs, Plaintiffs still wrongfully believe the PGs are in place.

46. Simply, on or around May 13, 2022, Defendants sent to Plaintiffs a copy of the compliance certificate via email for the fiscal quarter ending on March 31, 2022, in which on or around July 22, 2022, Plaintiffs confirmed receipt of the compliance certificate from the fiscal quarter ending on March 31, 2022. This resolves the first fiscal quarter of compliance. *See* Ex. A, App. 3; *see also* Ex. A-16, A-17. .

47. On or around August 15, 2022, Defendants sent to Plaintiffs a copy of the compliance certificate via email for the fiscal quarter ending on June 30, 2022, and on the same day Plaintiffs confirmed receipt of the compliance certificate. This resolves the second fiscal quarter of compliance. *See* Ex. A, App. 3; *see also* Ex. A-18, A-19

48. Despite meeting the requirements as clearly outlined in the Guarantee Agreement,

Plaintiffs still wrongfully believe that Defendants Cord and Cole still maintain PGs, which is not the case and finding otherwise would make Defendants Cord and Cole personally responsible for millions of dollars.

49. Accordingly genuine issues of material facts exist as to: whether Defendants met the requirements of Section 9.3 Release of Guarantors of the Guarantee Agreement, resulting in the contractual release of the individual guarantees; whether Defendants forwarded two quarters of certificates of compliance whether the certificates were acknowledged by the Plaintiffs. .

50. Therefore, Plaintiffs are not entitled to summary judgment. The Court should deny the motion in its entirety as to all PG Defendants.

## VI
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiffs' motion for summary judgment be denied, and request all other relief, at law or in equity, to which then may be justly entitled.

Respectfully submitted,


/s/ *Stacey Barnes*
Stacey L. Barnes
SBN: 24006800
sbarnes@kmd.law
Bradley A. Nevills
SBN: 24083561
bnevills@kmd.law
Vikesh N. Patel
SBN: 24124350
vpatel@kmd.law
KEARNEY, MCWILLIAMS & DAVIS, PLLC
55 Waugh Drive, Suite 150
Houston, Texas 77007
Tel: 713-936-9620, ext. 123
Fax: 281-206-0481
***Attorney for Defendants***

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that on the April 22, 2024, a true and correct copy of the foregoing instrument has been forwarded to all counsel of record and/or pro se parties, by means of the Court's electronic filing system, in accordance with the Rules of Civil Procedure.

                                                 */s/Stacey Barnes*_____
                                                 Stacey L. Barnes