IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CADENCE BANK, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-CV-609-BJ |
| | § | |
| BRIDGELINK ENGINEERING, LLC, et al., | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs Cadence Bank ("Cadence") and Century Bank ("Century") (collectively "Plaintiffs")' Motion for Summary Judgment [doc. 35] and Motion to Strike [doc. 50].  A hearing was held on the Motions on May 30, 2024.[1]

---

[1] The Court's Order setting the hearing provided—after explicitly stating what motions were before the Court—that "all parties and counsel appear before this Court . . . for a hearing on Plaintiffs' motions.  Additionally, Defendants shall come prepared to show cause as to why the Court should not impose sanctions. . . ."  (ECF No. 60).

Despite this unambiguous language—which Plaintiffs understood, as they appeared with all counsel and party representatives—Defendants counsel failed to appear as ordered.  While Defendants Cord Johnson and Cole Johnson were present, ***none of the six attorneys*** who are counsel of record for Defendants appeared.  Rather, Devon Decker—an attorney who was new to the case and had not previously made an appearance—showed up as Defendants' counsel.  Predictably, and by his own admission, Mr. Decker was unfamiliar with many of the issues in this case and was seemingly unprepared to make good faith arguments for why Plaintiffs' motions should not be granted.  In fact, Mr. Decker had to ask the Court for clarification on what motions were being argued and requested that the Court recess the hearing so that he might prepare a written response to the arguments presented by Plaintiffs at the hearing. Because Mr. Decker had nothing to do with the discovery abuses that occurred in this case, the Court forewent the show cause hearing as it would have not been productive to ask Mr. Decker to attempt to answer for the failures of the counsel who failed to appear as ordered.

The Court considered holding a subsequent show cause hearing and requiring all six attorneys—**Jason Klein, Bradley Nevills, Stacey Barnes, Vikesh Patel, John Giacalone, and Rebecca Eaton**—to appear and answer for the alleged discovery abuses in this case, as well as their failure to appear, as ordered, for the motion and ***show cause hearing***.  However, the Court determined that it would be a waste of judicial resources to hold such a hearing.

Having carefully considered the briefing, parties' arguments, and applicable law, Plaintiffs' Motion for Summary Judgment is **GRANTED** for the reasons stated herein. Consequently, Plaintiffs' Motion to Strike [doc. 50] is **DENIED** as moot**.**

## I.    BACKGROUND

Plaintiffs filed this suit against Defendants Bridgelink Engineering, LLC (the "Borrower"), Cole Wayne Johnson, Cord Henry Johnson, Bighorn Construction and Reclamation, L.L.C., Bighorn Sand & Gravel, LLC, and Bighorn Investments and Properties, LLC (collectively the "Guarantors") alleging two causes of action.[2]  (Plaintiffs' Original Complaint ("Pls.' Compl.") at 1–7).  Specifically, Plaintiffs allege a breach of contract claim against the Borrower and a breach of contract claim against the Guarantors.  (Pls.' Compl. at 5–6).

On August 6, 2021, the Borrower and Plaintiffs entered into a Credit Agreement.  (*Id.* at 3).  Pursuant to the Credit Agreement, the Borrower executed and delivered separate Revolving Loan Notes (the "Notes") to Plaintiffs.  (*Id.* at 4).  The promissory note to Cadence was for an original principal amount of $20,000,000.00 and the promissory note to Century was for an original principal amount of $14,000,000.00.  (*Id.*).  On or before March 29, 2022, each of the Guarantors signed a Guaranty Agreement, making them liable for the entire indebtedness arising under the Notes.  (*Id.*).    Plaintiffs allege that the Borrower subsequently defaulted on the Notes by failing to tender quarterly payments on or before December 31, 2022, and March 31, 2023.  (*Id.* at 4–5).  Further, Plaintiffs allege that neither the Borrower nor the Guarantors have made any payments on the loans since the alleged default dates.  (*Id.*).  Consequently, Plaintiffs seek to recover the total remaining balance on the Notes, plus the applicable interest and attorneys' fees. (*Id.*).

---

[2] Plaintiffs pled a third "cause of action" titled "Attorneys' Fees Interests and Costs."  (Pls.' Compl. at 6). Because that is not an independent cause of action, the Court will address only the two breach of contract claims.

## II.     LEGAL STANDARD

The moving party is entitled to summary judgment as a matter of law when the pleadings and evidence before the court show that no genuine issue exists as to any material fact.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "To determine whether there are any genuine issues of material fact, the court must first consult the applicable substantive law to ascertain what factual issues are material." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  Disposing of a case through summary judgment serves to reinforce the purpose of the Federal Rules of Civil Procedure "to achieve the just, speedy, and inexpensive determination of actions, and when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

All of the evidence must be viewed in the light most favorable to the nonmovant, but the movant may not satisfy his or her summary judgment burden with either conclusory allegations or unsubstantiated assertions.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citations omitted); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citations omitted).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (cleaned up).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  Although the Court is required to consider only the cited materials, it may consider other materials in the record. FED. R. CIV. P. 56(c)(3).  Nevertheless, "Rule 56 does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v.*

3

*Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992).  Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim."  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citations omitted).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim."  *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex*, 477 U.S. at 325).  "The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists."  *Id.*

### III.   ANALYSIS

In their Motion for Summary Judgment, Plaintiffs argue that they are entitled to summary judgment because the undisputed facts of this case are sufficient to satisfy all of the elements of their claims.  (Plaintiffs' Brief in Support of Their Motion for Summary Judgment ("Pls.' Br.") at 7–8).  In response, Defendants claim that Plaintiffs' motion should be denied because there are genuine issues of material fact regarding whether Plaintiffs breached the contracts first. (Defendants' Amended Brief in Support of Their Response ("Defs.' Br.") at 7–12).  Specifically, Defendants claim that Plaintiffs refused to: (1) allow the Borrower to exercise the accordion feature of the loan; and (2) release the Guarantors when they were required to do so under the parties' agreement.  (Defs.' Br. at 7–12).  Defendants contest that both actions by Plaintiffs constituted a material breach such that they were relived from their duty to perform.  (*Id.*)

In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract

by the defendant; and (4) damages sustained by the plaintiff because of the breach.  *See Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).  "A breach occurs when a party fails to perform a duty required by the contract."  *Id.* (cleaned up).  In this case, the parties do not dispute that there were valid contracts, Defendants have failed to perform under those contracts, and Plaintiffs have sustained damages as a result of the Defendants' breach.  (*See generally* Pls.' Br.; Defs.' Br.).  However, as discussed above, the parties do dispute whether Plaintiffs breached the contracts first, such that Defendants' performance was excused.  Consequently, Plaintiffs' motion hinges on whether there are material disputes of fact regarding who breached the contracts first.

### A.  The Borrower and the Credit Agreement

Beginning with the Borrower and the Credit Agreement, Defendants claim that Plaintiffs' breach of contract claim against the Borrower fails because Plaintiffs breached first by refusing to allow them to exercise the accordion feature of the Credit Agreement.  (Defs.' Resp. at 7–10).  In their reply, Plaintiffs argue that the "accordion feature was discretionary and cannot serve as the basis for any claim of breach of contract."  (Pls.' Reply Br. at 8).  In their sur-reply, Defendants claim that the accordion feature was not discretionary because "Defendants stressed the importance of receiving all the funds to properly fund projects."  (Defendants' Sur-Reply ("Defs.' Sur-Reply") at 5).

While Defendants argue that the parties had an understanding that is not reflected in the text of the written contract, "courts must ascertain and give effect to the parties' intentions as expressed in the writing itself."  *El Paso Field Servs., L.P. v. MasTec N. Am., Inc*., 389 S.W.3d 802, 805 (Tex. 2012) (citation omitted).  "Consideration of surrounding circumstances is limited by the parol evidence rule, which prohibits a party to an integrated written contract from presenting extrinsic evidence 'for the purpose of creating an ambiguity or to give the contract a meaning

different from that which its language imports.'" *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 764 (Tex. 2018) (footnote and citations omitted). However, "[e]vidence of the parties' subjective intent and conduct, and surrounding facts and circumstances, including evidence of the parties' course of performance in performing the contract and industry custom and usage [is] relevant after the court has determined that the contract is ambiguous." *Heatcraft Refrigeration Prods. LLC v. Freezing Equip. Co*., 2022 WL 975611, at *12 (N.D. Tex. Mar. 31, 2022) (citations omitted); *see also, e.g., Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) (citation omitted) ("Parol evidence—such as the parties' course of performance—may be used to ascertain the intent of the parties only if the contract is first found to be ambiguous."). Here, Defendants predicate their argument, that the accordion feature was not discretionary, on an email exchanged that occurred prior to the signing of the Credit Agreement. (Sur-Reply at 5). Because such evidence is parol evidence, the Court will not consider it unless it finds that the text of the contract is ambiguous. Consequently, the Court will begin by looking at the text of the accordion feature to determine whether it is ambiguous.

The accordion feature states in its entirety:

Section 2.10    Accordion.

(a)    At any time during the period from and after the Closing Date through but excluding the date that is the Maturity Date, at the option of Borrower (but subject to the conditions set forth in clause (b) below), the Revolving Commitments may be increased by an amount in the aggregate for all such increases of the Revolving Commitments not to exceed the Available Increase Amount (each such increase, an "Increase"). Administrative Agent shall invite each Lender to increase its Revolving Commitment (it being understood that no Lender shall be obligated to increase its Revolving Commitment) in connection with a proposed Increase at the interest margin proposed by Borrower, and if sufficient Lenders do not agree to increase their respective Revolving Commitments in connection with such proposed Increase, then Administrative Agent or Borrower may invite any prospective lender who is an Eligible Assignee that is reasonably satisfactory to Administrative Agent and Borrower to become a Lender in connection with a proposed Increase. Any Increase shall be in an amount of at least $5,000,000 or such other amount as Administrative Agent may approve, and integral multiples of $1,000,000 in excess thereof.

(b)      Each of the following shall be conditions precedent to any Increase of the Revolving Commitments:

(i)      Administrative Agent or Borrower shall have obtained the commitment of one or more Lenders (or other prospective lenders) reasonably satisfactory to Administrative Agent and Borrower to provide the applicable Increase and any such Lenders (or prospective lenders), Borrower, and Administrative Agent have signed a joinder agreement to this Agreement (an "Increase Joinder"), in form and substance reasonably satisfactory to Administrative Agent, to which such Lenders (or prospective lenders), Borrower, and Administrative Agent are party,

(ii)     each of the conditions precedent set forth in Section 4.2 are satisfied, and

(iii)    Borrower shall have reached agreement with the Lenders (or prospective lenders) agreeing to the increased Revolving Commitments with respect to the interest margins applicable to Loans to be made pursuant to the increased Revolving Commitments (which interest margins may be higher than or equal to the interest margins applicable to Loans set forth in this Agreement immediately prior to the date of the increased Revolving Commitments (the date of the effectiveness of the increased Revolving Commitments, the "Increase Date")) and shall have communicated the amount of such interest margins to Administrative Agent.  Any Increase Joinder may, with the consent of Administrative Agent, Borrower and the Lenders or prospective lenders agreeing to the proposed Increase, effect such amendments to this Agreement and the other Loan Documents as may be necessary or appropriate to effectuate the provisions of this Section 2.10 (including any amendment necessary to effectuate the interest margins for the Loans to be made pursuant to the increased Revolving Commitments).  Anything to the contrary contained herein notwithstanding, if the interest margin that is to be applicable to the Loans to be made pursuant to the increased Revolving Commitments are higher than the interest margin applicable to the Loans hereunder (as applicable) immediately prior to the applicable Increase Date (the amount by which the interest margin is higher, the "Excess"), then the interest margin applicable to the Loans immediately prior to the Increase Date shall be increased by the amount of the Excess, effective on the applicable Increase Date, and without the necessity of any action by any party hereto,

(iv)    the payment of all fees with respect to such Increase as provided in the Fee Letter.

(c)      Unless otherwise specifically provided herein, all references in this Agreement and any other Loan Document to Loans shall be deemed, unless the context otherwise requires, to include Loans made pursuant to the increased Revolving Commitments pursuant to this Section 2.10.

(d)      Each of the Lenders having a Commitment prior to the Increase Date (the "Pre-Increase Lenders") shall assign to any Lender which is acquiring a new or additional Commitment on the Increase Date (the "Post-Increase Lenders"), and such Post-Increase Lenders shall purchase from each Pre-Increase Lender, at the principal amount thereof, such interests in the Loans on such Increase Date as shall be necessary in order that, after giving effect to all such assignments and purchases, such Loans and participation interests in Letters of Credit will be held by Pre-Increase Lenders and Post-Increase Lenders ratably in accordance with their Pro Rata Share after giving effect to such increased Revolving Commitments.

(e)      The Loans, and Revolving Commitments, established pursuant to this Section 2.10 shall constitute Loans and Revolving Commitments under, and shall be entitled to all the benefits afforded by, this Credit Agreement and the other Loan Documents, and shall, without limiting the foregoing, benefit equally and ratably from any guarantees and the security interests created by this Credit Agreement and the other Loan Documents.  Borrower shall take any actions reasonably required by Administrative Agent to ensure and demonstrate that the Liens and security interests granted by Borrower pursuant to this Agreement and the other Loan Documents continue to be perfected under the Uniform Commercial Code or otherwise after giving effect to the establishment of any such new Revolving Commitments.

(Pls.' App. at 66–67).

7

A review of the language of the accordion feature reveals that the text is unambiguous[3] and clearly states that Plaintiffs were under no obligation to loan Defendants additional money under the clause.  In fact, while the clause states that Defendants may choose—if certain conditions are met—to seek an increase in the size of the loan, it also explicitly states that "no [Plaintiff] shall be obligated to increase its Revolving Commitment."  (*Id.* at 66).  Because there is no competent, non-parol, summary judgment evidence to rebut the explicit language of the contract, the Court concludes that the accordion feature was discretionary and, thus, cannot serve as the basis of an alleged breach of the contract.[4]  *See, e.g., Kellerman v. Avaya, Inc*., No. A-11-CV-359 ML, 2012 WL 12878175, at *4 (W.D. Tex. Nov. 6, 2012) (holding that there can be no breach of contract based on a discretionary clause) (collecting cases); *see also Nichols v. Enterasys Networks, Inc*., 495 F.3d 185 (5th Cir. 2007) (holding that "Nichols cannot show that Enterasys breached the terms of the FY2000 Plan in exercising rights clearly reserved to it by the Plan's language.").  Because the unambiguous language of the Credit Agreement states that Plaintiffs are not obligated to loan Defendants additional money; Plaintiffs' choice to exercise its right to decline to increase their obligations cannot serve as the basis for a breach of contract.  Thus, the Court concludes that Plaintiffs did not breach the contract by failing to exercise the accordion feature.  Accordingly— because the other elements are undisputed—the Court finds that there are no disputes of material fact regarding Plaintiffs' breach of contract claim against the Borrower and, thus, Plaintiffs' Motion for Summary Judgment is **GRANTED** as to that claim.

---

[3] At the May 30, 2024 hearing, Defendants' counsel stated that he did not believe that the language of the contract was ambiguous.

[4] The Court's finding is strengthened by the fact that the Borrower's CFO at the time the contracts were entered into testified at his deposition that: (1) the accordion feature was not an automatic increase; (2) Plaintiffs did not have to participate; (3) the exercise of the accordion was discretionary; and (4) there were no funds that Plaintiffs refused to advance.  (*See* Pls.' Reply App. at 55–56).

### B.  **The Guarantors and the Guaranty Agreements**

As discussed above, Defendants do not, and cannot, dispute that there is a valid contract, that they are in breach of that contract, nor that Plaintiffs have suffered harm as a result.  However, Defendants argue that Plaintiffs failed to perform under the contract because the Guarantors should have been released from their obligations under Section 9.3 of the Guaranty Agreement which provides:

> The Guarantors shall be released from their obligations under this Guarantee Agreement upon the earlier to occur of (A) the Termination Date, or (B) full satisfaction of each of the following conditions: (i) no Default or Event of Default is then continuing, (ii) the Administrative Agent has notified Guarantors that it has received evidence of the compliance by Borrower of each of the financial covenants set forth in Section 7.12 of the Credit Agreement for two consecutive fiscal quarters of Borrower commencing with the fiscal quarter ending March 31, 2022, and (iii) the Borrower is in full compliance with Section 2.7(b)(ii) of the Credit Agreement for two consecutive fiscal quarters of Borrower commencing with the fiscal quarter ending March 31, 2022; provided that provisions hereof that by their terms survive the termination of the Credit Agreement and the other Loan Documents shall so survive.

(Plaintiffs' Motion Appendix ("Pls.' Mot. App.") at 234)

Specifically, Defendants argue that they should have been released from their obligations because they were in compliance with the credit agreement for three consecutive fiscal quarters beginning with the quarter ending March 31, 2022.  (Defs.' Br. at 11–12; Defs.' Sur-reply at 3).  However, as pointed out by Plaintiffs, on July 14, 2022, the parties entered into a "Third Amendment to Credit Agreement," which contains the following language:

> In consideration of the Administrative Agent and the Lenders entering into this Amendment, [Defendants] acknowledge and agree that the fiscal quarter ending March 31, 2022 shall not count as a quarter of compliance for purposes of Section 9.3 of the Guarantee Agreement dated as of March 29, 2022. . . .

(Plaintiffs' Reply Brief ("Pls.' Reply Br.") at 9–10) (Plaintiffs' Reply Appendix ("Pls.' Reply App.") at 64).

Because, under the parties' July 14, 2022 agreement, the quarter ending on March 31, 2022, cannot be counted towards the two consecutive quarters of compliance, the Court must determine if Defendants received acceptance of their certificates of compliance for the quarters ending in June 2022 and September 2022.   At the hearing, Plaintiffs conceded that the certificate of compliance for the quarter ending in June 2022 was submitted and accepted.   However, as pointed out by Plaintiffs at the hearing, the Plaintiffs never accepted the certificate of compliance that was submitted for the quarter ending in September 2022.   Because the certificate of compliance was not accepted, as required by the terms of the release clause, Defendants have failed to provide any evidence that the Borrower was in compliance for two consecutive quarters such that the Guarantors should have been released from their obligations.[5]   Additionally, Defendants made no argument, nor provided any evidence,[6] that they satisfied the other two requirements of the release clause.   (See Pls.' Mot. App. at 234 (providing the conditions of release)).   Thus, because there is no evidence that the Guarantors should have been released from their obligations, the Court concludes that Plaintiffs did not breach the contract by failing to release the Guarantors. Consequently—because the other elements are undisputed—the Court finds that there are no disputes of material fact regarding Plaintiffs' breach of contract claim against the Guarantors and, thus, Plaintiffs' Motion for Summary Judgment is **GRANTED** as to that claim.

### C.  Attorneys' Fees

As discussed above, Plaintiffs also request that the Court grant them attorneys' fees and costs pursuant to the parties' agreements stating that Defendants are liable for such fees and costs.

---

[5] At the hearing, the Court explicitly asked Defendants' counsel for any evidence that they had received acceptance of the certificate of compliance for the quarter ending in September 2022. Mr. Decker stated that he did not have any.

[6] The Court also explicitly asked Mr. Decker for evidence regarding these requirements.  Mr. Decker again stated that he did not have any.

Having reviewed Plaintiffs' arguments and evidence, and noting that Defendants wholly failed to respond to Plaintiffs' claim, Plaintiffs' motion is also **GRANTED** as to the attorneys' fees and costs.

### IV.    CONCLUSION

For the reasons set out above, it is **ORDERED** that Plaintiffs' Motion for Summary Judgment [doc. 35] is **GRANTED** and Plaintiffs' Motion to Strike [doc. 50] is **DENIED** as moot.

It is further **ORDERED** that Plaintiffs, **on or before June 13, 2024,** shall file an updated application for attorneys' fees and costs that includes those costs and fees incurred for these motions and the hearing.   The billing records shall be unredacted so that the Court can meaningfully review the fees under applicable Fifth Circuit precedent.   Given Plaintiffs' attorney client privilege concerns, such application may be filed under seal.   Defendants shall, **on or before June 20, 2024**, file their response in which they may dispute the reasonableness of the requested fees.

SIGNED May 30, 2024.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE