**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CADENCE BANK F/K/A BANCORPSOUTH BANK AND CENTURY BANK,** | § § § § | |
| **PLAINTIFFS,** | § § | |
| **V.** | § § | **CIVIL ACTION NO 4:23-CV-00609(BJ)** |
| **BRIDGELINK ENGINEERING, LLC, COLE WAYNE JOHNSON, CORD HENRY JOHNSON, BIGHORN CONSTRUCTION AND RECLAMATION, L.L.C., BIGHORN SAND & GRAVEL LLC, BIGHORN INVESTMENTS AND PROPERTIES, LLC** | § § § § § § § § § | |
| **DEFENDANTS.** | § | |

**JUDGMENT DEBTORS' RESPONSE IN OPPOSITION TO THE BANKS'
"REQUEST" FOR APPOINTMENT OF SUBSTITUTE RECEIVER
AND FOR OTHER AMENDMENTS TO THE EXISTING RECEIVERSHIP ORDER**

## I.    INTRODUCTION

On December 30, 2025, Mr. Kelly McCullough and Mr. Jason Rae (the "Receivers") resigned, citing an unspecified "breakdown between the Receivers and the Plaintiffs in this case." ECF Nos. 281, 281-1. This was unsurprising, because the Receivers had previously indicated that Cadence Bank and Century Bank (sometimes referred to as "Plaintiffs," "Banks," or "Judgment Creditors") had been less than fully cooperative and less than candid in their dealings with the Receivers.

Shortly thereafter, Rochelle McCullough, LLP filed an unopposed motion to withdraw as the Receivers' counsel, citing the same, unspecified "breakdown between the Receivers and the Plaintiffs in this case." ECF 282, ¶ 4. Again, their withdrawal was unsurprising inasmuch as they had previously explained that the Banks had been less than fully cooperative in providing documents relevant to the

Receivers' efforts to identify assets and had not been completely candid about the facts surrounding the flow of funds.

Last week, Plaintiffs filed a so-called "Response to Receivers' Notice of Resignation and Plaintiffs' Joint Request to Substitute Receiver" (hereafter, the "Request") (ECF No. 283), which seeks affirmative relief and seeks to amend the existing Amended Receivership Order (ECF No. 243) (the "Receivership Order") without following the Federal Rules of Civil Procedure or this Court's Local Rules. For the reasons set forth below, the Judgment Debtors oppose the requested relief.

## II.    ARGUMENT

The Court should deny the requested relief unless and until the Banks file a formal motion in compliance with the Federal Rules of Civil Procedure and with this Court's Local Rules, explain the "breakdown between the Receivers and the Plaintiffs in this case," and commit to full cooperation with the collection activities of the parties, including the Judgment Debtors and any substitute receiver. Further, the Court should not appoint a substitute receiver unless and until the Receivership Order is further amended to comply with applicable law and tailored to the specific facts of this case.

> **A.    The requested relief should be denied because the Banks did not comply with the Federal Rules or with this Court's Local Rules.**

The Banks seek affirmative relief, including amendments to an existing order, without following FED. R. CIV. P. 7(b) ("A request for a court order must be made by motion.") or this Court's Local Rules. For example, the Request seeks the appointment of a substitute receiver, as well as other amendments to the existing Receivership Order, including increased fees (of nearly 25%), while styling its stealth motion as a "Response," which it filed without conferring with the Judgment Debtors' counsel. *Compare* Request (ECF No. 283) at 5 (omitting Certificate of Conference) *with* Local Civ. R. 7.1(a), (b), and (h) (requiring Certificate of Conference for any motion to amend).

The Request for a substitute receiver specifies an individual in Dallas, Mr. Andrew R. Korn, who markets himself as an ultra-aggressive enforcer and debt collector, calls himself "the Gator," and boasts that "[t]he purpose of a receivership [is] not to go be a nice guy":



Source: https://andrewrkornpllc.com/about/. Notwithstanding his colorful marketing, Mr. Korn is apparently a competent and skilled Dallas attorney and is qualified to serve as a receiver.

The Judgment Debtors welcome the opportunity to work cooperatively with a substitute receiver – gator or otherwise – so long as he follows the law, understands that he answers to the Court (*not* to the Banks), and focuses his efforts on recoverable assets, namely, the non-exempt assets of the Judgment Debtors. Of course, as explained in Part II.C *infra*, the Judgment Debtors do not have assets to satisfy the judgment, and any attempted overreach that seeks to disrupt the legitimate business activities of any non-judgment-debtor entity ("NJDE") must be expressly proscribed.

Further, the Banks have failed to explain why they were unable to locate an individual anywhere in Tarrant County to fill this role, or, alternatively, why they are entitled to Dallas-level fees if they insist upon having a Dallas attorney appointed as the substitute receiver. Since those fees are ultimately chargeable to the Receivership Estate, the Judgment Debtors have a cognizable economic interest and, thus, standing to ensure that the fees are reasonable for this geographic area. The parties

requesting the relief (i.e., the Banks) should be required to satisfy their burden of demonstrating that such lofty fees would be necessary and reasonable for the task at hand.

**B.    The requested relief should be denied unless and until the Banks commit to full cooperation with the receiver.**

The Judgment Debtors are deeply concerned about reports that the Banks were not entirely candid or cooperative with the efforts of the Receivers and their outside counsel. For this reason, the Judgment Debtors respectfully request copies of the three or so weekly reports the Receivers submitted to the Court prior to their resignation. The Judgment Debtors requested copies of the reports from the Receivers' outside counsel.  Ms. Shannon Thomas responded that she did not oppose the request but would defer to the Court, stating in a written email to the undersigned: "we have no problem with [the Court] providing [the reports] to you."

Regardless, based on filings that are already public, it is apparent the Banks have been less than candid with this Court and with its appointed officers. For example, the Banks have made the spurious and unfounded allegation that the Judgment Debtors have "doctored and/or altered" documents – an allegation that suggests felony obstruction of justice or, at a minimum, spoliation of evidence. *See* ECF No. 271 at 9 & n.9. But in that instance, the Judgment Debtors simply reproduced ***Cadence bank statements*** that had been produced in earlier litigation where it was appropriate to redact a portion of the account number. Having achieved the desired shock value of their inflammatory rhetoric, the Banks then acknowledge that they were able to locate unredacted and unaltered versions of the allegedly "altered" documents within their own files. ECF No. 271 at 9. This is merely one example of the Banks' troubling reliance on half-truths and hyperbole.[1] The Receivers'

---

[1] If and when the Court holds an evidentiary hearing on the Banks' Amended Motion for Sanctions (*see* ECF Nos. 253, 269), the Judgment Debtors will (under oath) expose the many half-truths filed by the Banks. Alternatively, if the Court is willing to invite a sur-reply, the Judgment Debtors will gladly file a brief of ten (10) pages or less that exposes the Banks' less than candid representations in their Reply Brief (*see* ECF No. 271).

---

**JUDGMENT DEBTORS' RESPONSE TO THE BANKS' "REQUEST" FOR SUBSTITUTE RECEIVER    PAGE 4**
DM#807009.v6

resignation raises additional questions about the Banks' candor (or lack thereof) with the Court and its duly appointed officers.

**C.      The requested relief should be denied unless the receivership order is also amended to comply with applicable law and narrowly tailored to address the specific facts of this case.**

Ever since attorneys from the Whitaker Chalk law firm filed notices of appearance on October 27, 2025,[2] the Judgment Debtors have cooperated extensively with the Receivers, by: filing monthly reports (ECF Nos. 273, 274, 275, 285, 286); providing sworn testimony, including detailed disclosures about the corporate structure and organization of the Judgment Debtors *and* the NJDEs (*see* excerpts from the Transcript of Cord Johnson's December 10, 2025, Deposition, attached hereto as Ex. A) (hereafter, "Tr." or "Ex. A"); and providing detailed responses to the Receivers' follow-up correspondence (*see* Ex. B, Appx. 39-47). For example, Cord Johnson provided sworn testimony on the following subjects:

1.      The Judgment Debtors' willingness and commitment to provide full transparency regarding their dealings with the Banks, the flow of funds borrowed from the Banks, and the structure, operations, and relationship between the Judgment Debtors and NJDEs (Ex. A at 7-9; Appx. 5).

2.      The Judgment Debtors' compliance with the Court's existing Amended Receivership Order (Ex. A at 9-12; Appx. 5-6).

3.      The Judgment Debtors' assets and, in particular, the receivables of certain Judgment Debtor entities that served as collateral for the Banks' loans (Ex. A at 14-15, 72-74 and Ex. A-5 thereto; Appx. 7, 18-19, 33).

4.      Various efforts to restructure the loan in a way that would provide additional collateral (e.g., access to the assets of NJDEs) and the Banks' rejection of those overtures (Ex. A at 76-79 and 111-112; Appx. 19-20, 28).

---

[2] *See* ECF Nos. 232 and 233. On a related note, the Judgment Debtors have since provided formal notice terminating the Kearney McWilliams & Davis Law Firm ("KMD"). KMD will have no further role in this litigation and is expected to file a motion to withdraw shortly. Of course, the Court is free to consider whether and to what extent it should address KMD's previous actions or inaction in this matter. The Judgment Debtors' termination of KMD is in no way an attempt to interfere with the Court's oversight of, or jurisdiction over, the parties or their counsel (or former counsel).

5. The "flow of [borrowed] funds" (an inquiry that should be limited to the $12M actually available for project liquidity, *not* the $40M recited in the judgment) and documents in the Banks' possession reflecting that flow (Ex. A at 15-30, 39, 50-53, 64, and 69-72 and Ex. A-6 thereto; Appx. 7-11, 13, 16, 17-18, 33-37). For example, at page 30 of the transcript (Appx. 11), Mr. Johnson testified that "none of the $34 million went to Cole or Cord Johnson personally, other than salary as described [at pages 22-26 (Appx. 9-10) of the transcript]," and he explained that he has "never taken a distribution from any one of [the] entities [with which he is associated]." *See also* Ex. A at 74-76 (Appx. 19) (no distributions; no fraudulent transfers).[3]

6. How the Banks' own missteps and lack of cooperation contributed significantly to the failure of the business venture and to Bridgelink's ultimate inability to re-pay the loan (Ex. A at 54-64, 72-73; Appx. 14-16, 18).[4]

7. The NJDEs, their ownership, their structure, and their operations, if any (Ex. A at 12-14 and 81-111 and Exs. A-4 and A-7 thereto; Appx. 6-7, 20-28, 31-32, 38).

8. Cord Johnson's personal finances. Tr. at 115-124.[5]

As shown, the Judgment Debtors are committed to full disclosure, have produced the documents requested by the Receivers (to the extent they exist and are accessible), and will make themselves available for further depositions. By contrast, the Banks have *not* fully cooperated with

---

[3] To be clear, the Johnsons had successful business ventures *before* their business dealings with Cadence Bank, and they have helped build successful businesses *since* that relationship soured, including at least one publicly traded company. *See, e.g.*, Ex. A at 54-59, 108-09 (Appx. 14-15, 27). For these reasons, among others, the Johnsons had no reason to divert borrowed funds for personal gain and have not done so. Further, as the Banks expressly acknowledged in their initial application for appointment of a receiver, **this is a breach of contract case, <u>not</u> a fraud or fraudulent transfer case**. *See* ECF No. 211, ¶¶ 3-4. The Banks are sophisticated financial players who had every opportunity to negotiate favorable terms, including the terms for any required collateral. Ex. A at 76-78. Further, they had every right to exercise (and did, in fact, regularly exercise) oversight and audit functions during the relationship. Ex. A at 62, 64, 70-72, 107-08 (Appx. 16, 18, 27). If any of the borrowed funds had been mishandled or misappropriated, such irregularities would have been flagged long ago. They were not. Neither the Banks' failure to secure sufficient collateral nor their rank covetousness is a sufficient legal basis to seize assets of a NJDE, to meddle in the affairs of NJDEs that were *not* the subject of the underlying lawsuit, or to overcome the limitations of applicable law. *See* TEX. BUS. ORGS. CODE § 101.112 (sole remedy against judgment debtor's interest in an LLC is a charging order); Receivership Order (ECF No. 243) at 4, 14-15 (issuing a charging order and mandating compliance with Texas law regarding same); *Krumnow v. Krumnow*, 174 S.W.3d 820, 828 (Tex. App.—Waco 2005, pet. denied) ("A court may appoint a receiver … to preserve or protect **the property in litigation**.") (emphasis added), citing TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6).

[4] All of this was apparently "news" to the Receivers, who had been led to believe that the Judgment Debtors had absconded with some of the borrowed funds – an utter falsehood with no evidentiary support.

[5] For privacy purposes, these excerpts are not attached hereto. The entirety of the transcript has been provided to the Banks and will be made available to the Court upon request.

---

the Receivers' efforts. Now, the Judgment Creditors seek a new receiver who will more aggressively pursue the assets of NJDEs – presumably with tactics that are less measured and less methodical than those employed by the previous Receivers. Any misstep or attempted overreach in this regard could result in significant damage to one or more of the NJDEs. Accordingly, the Receivership Order should be modified to reflect these recent developments and the facts on the ground. So, if the Banks wish to have a new receiver appointed, the appointment should only occur, if at all, in connection with other necessary modifications to the existing Receivership Order (ECF 243).

> 1. **An amended Receivership Order should clarify the receiver's rights and limitations with respect to NJDEs.**

The receiver's collection efforts must be limited to the non-exempt assets of the Judgment Debtors, which are modest (much to the Banks's frustration). The only possible exceptions involve (a) distributions made by a non-judgment-debtor LLC to Cole or Cord Johnson, and (b) fraudulent transfers. To date, there is no evidence of any such distributions (because no such distributions have been made) and no evidence of any fraudulent transfers (because no such transfers have occurred). On this point, Cord Johnson testified, unequivocally and under oath, to that effect. Ex. A at 74-76 (Appx. ____). The Judgment Debtors recognize that a receiver may nevertheless be entitled to pursue evidence of distributions and suspected fraudulent transfers, and the Judgment Debtors stand ready to cooperate with such efforts. But the terms of an amended Receivership Order must clearly protect against any overreach or unmerited fishing expedition that would threaten to interfere with the operations or assets of any such NJDE. *See* ECF No. 234 at 2-8, ECF No. 239 at 1-3, and ECF No. 242 at 2-3, 14-15 (incorporated by reference). Accordingly, the first full paragraph of page 3 of the Receivership Order (ECF No. 243) should be amended to clarify this point.

### 2.    An amended order should increase the bond amount.

On a related note, the surest way to protect against any such overreach is to set a bond that complies with applicable law. The current bond of $1,000 is grossly insufficient and does not comply with applicable law. *See* TEX. CIV. PRAC. & REM. CODE § 64.023 (requiring a "sufficient bond"); *Netsphere, Inc. v. Baron,* 703 F.3d 296, 305, 311-12 (5th Cir. 2012) (receivership is an extraordinary remedy that should be employed with the utmost caution). The bond should be increased to at least $250,000, as previously described. *See* ECF No. 239 at 3 and ECF No. 242 at 11-12 (incorporated by reference).

### 3.    An amended order should eliminate the onerous reporting requirements.

Finally, the onerous reporting requirements recited at pages 9-11 of the existing Receivership Order are deeply problematic: they are onerous; they improperly unnecessarily require detailed reporting about NJDEs; they are inconsistent with the charging order recited at page 4 of the Amended Receivership Order; and they violate the Thirteenth Amendment of the United States Constitution by requiring the Judgment Debtors to perform uncompensated work for the benefit of another (i.e., work *other than* responding to specific discovery requests and subpoenas, as authorized by the Receivership Order and the Federal Rules of Civil Procedure). *See* ECF No. 234 at 9-10, ECF No. 239 at 4, and ECF No. 242 at 9-11, 15 (incorporated by reference). To date, the Judgment Debtors have made good faith efforts to comply with the reporting requirements. *See* ECF Nos. 273, 274, 275, 285, 286. But the Receivership Order should now be modified to eliminate those requirements for the reasons set forth above and for additional practical reasons: the Receivership Order already provides a suite of tools for a receiver to obtain relevant information; the Judgment Debtors have demonstrated cooperation by providing detailed deposition testimony and by offering to sit for additional depositions, if necessary (*see* Ex. A, Appx. 3-30); and the Judgment Debtors have demonstrated an

ability and willingness to deal cooperatively and professionally with a receiver through informal correspondence and through prompt and detailed responses to same (*see* Ex. B, Appx. 39-47).

## III.    CONCLUSION AND PRAYER

For these reasons, the Banks' improper request to amend the existing receivership order (i.e., a motion disguised as a "response") should be denied in its entirety, and the Banks should be ordered to meet and confer with the Judgment Debtors' counsel, who will confer in good faith to identify common ground.  If that conference is unsuccessful, then the Banks should be required to file a formal motion requesting relief, setting forth the factual and legal bases supporting the requested relief. The Judgment Debtors also request such further or additional relief to which they may be entitled.

Dated: January 14, 2026

Respectfully Submitted,

*/s/ David A. Skeels*
David A. Skeels
State Bar No. 24041925
Email: DSkeels@whitakerchalk.com
Direct line: 817-878-0573

Robert A. Simon
State Bar No. 18390000
Email: rsimon@whitakerchalk.com
Direct line: 817-878-0543

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce St., Suite 3500
Fort Worth, Texas  76102
817.878.0500 Telephone
817.878.0501 Facsimile
**Counsel for Defendants/Judgment Debtors**

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of January 2026, I served this document on all counsel of record via the Court's EMC/CF system.

*/s/ David A. Skeels*

---