**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| CADENCE BANK F/K/A BANCORPSOUTH BANK AND CENTURY BANK, | § § § § | |
| PLAINTIFFS, | § § § | |
| V. | § § | CIVIL ACTION NO 4:23-CV-00609(BJ) |
| BRIDGELINK ENGINEERING, LLC, COLE WAYNE JOHNSON, CORD HENRY JOHNSON, BIGHORN CONSTRUCTION AND RECLAMATION, L.L.C., BIGHORN SAND & GRAVEL LLC, BIGHORN INVESTMENTS AND PROPERTIES, LLC | § § § § § § § § § § | |
| DEFENDANTS. | § § | |

**JUDGMENT DEBTORS' RESPONSE IN OPPOSITION TO THE BANKS'
SUPPLEMENT TO THEIR AMENDED MOTION FOR SANCTIONS**

**I.   INTRODUCTION**

On February 24, 2026, Plaintiffs/Judgment Creditors Cadence Bank and Century Bank ("Plaintiffs," "Judgment Creditors," or "Banks") filed a so-called "Supplement" (ECF 309) to their Amended Motion for Sanctions (ECF 253). The Banks train most of their fire on the KMD law firm, but they also sling mud at the Judgment Debtors. The Supplement represents yet another improper attempt by the Banks to seize assets the Judgment Debtors never pledged as loan collateral and to which the Banks have no rights under Texas law: exempt assets of the Judgment Debtors and assets of Non-Judgment-Debtor Entities ("NJDEs"). The Judgment Debtors have previously documented their substantial compliance with the Court's orders and full cooperation with the Receivers (*see* ECF 287 and ECF 288) but will briefly update their compliance here.

The Banks have also proposed for the first time a new (but legally untenable) non-monetary sanction, asking this Court to strike the Judgment Debtors' exemptions, including their homestead exemption – in violation of Texas law. According to the Banks, the Judgment Debtors should be deprived of legal representation, living wages, and even a roof over their heads. Accordingly, the Judgment Debtors file this short reply to demonstrate that such a "remedy" is not available here.

## II.    ARGUMENT

Since the entry of the Amended Receivership Order, the Judgment Debtors have worked in good faith to comply with its terms, even while occasionally seeking to modify them.  The Judgment Debtors have provided thousands of pages of post-judgment discovery (*see* Production Log at Appx. 8-17), filed monthly Accounting Declarations, and have cooperated with efforts of the various Receivers, including scheduling in-person inspections of their residences. The Judgement Debtors made their electronic devices available for imaging, provided detailed lists of exempt property, and voluntarily presented Cord Johnson for a post-judgment deposition. While the Court has lawful authority to impose monetary sanctions against the Judgment Debtors for willful discovery abuse or for violations of the Amended Receivership Order, there is no cause to do so here.  Debt collection and post-judgment discovery are, by their nature, adversarial, and the Judgment Debtors have worked to protect their economic interests within the bounds of the Federal Rules of Civil Procedure. They have not defied the Court's authority, nor have they unlawfully obstructed the efforts of the Receivers.

The Banks' Supplement contains no new information, evidence, or declarations, but it includes a healthy serving of attorney argument and overheated rhetoric, while purporting to tell this Court what it "must" do, what it is "required" to do, and what "it is time for the Court to [do] without further delay" if it wishes to avoid certain "perceptions regarding [its] integrity." *See* ECF 309 at 5-6 and n.12. In other words, the Banks simultaneously acknowledge, and then disregard, the fact that

sanctions, if any, are in the Court's sole and absolute discretion. As previously described,[1] the Judgment Debtors have demonstrated their continuing efforts to comply with the Receiver's inquiries, as summarized and updated below.

By contrast, based on filings that are already public, it is apparent the Banks have been less than candid with this Court and with its appointed officers. For example, the Banks have made the spurious and unfounded allegation that the Judgment Debtors have "doctored and/or altered" documents – an allegation that suggests felony obstruction of justice or, at a minimum, spoliation of evidence. *See* ECF No. 271 at 9 & n.9. But in that instance, the Judgment Debtors simply reproduced **Cadence bank statements** that had previously been produced in other, unrelated litigation where it was appropriate to redact a portion of the account number. Having achieved the desired shock value of their inflammatory rhetoric, the Banks then acknowledge that they were able to locate unredacted and unaltered versions of the allegedly "altered" documents within their own files. ECF No. 271 at 9. This is merely one example of the Banks' troubling reliance on half-truths and hyperbole.[2] The resignation of the first set of Receivers certainly raises additional questions about the Banks' candor (or lack thereof) with the Court and its duly appointed officers.

A. **The Judgment Debtors have demonstrated compliance with the Court's Amended Receivership order and cooperation with the Receiver.**

As previously explained, the Judgment Debtors do not have assets to satisfy the judgment, and any attempted overreach that seeks to disrupt the legitimate business activities of any non-

---

[1] *See* Defendants' Response to Plaintiffs' Amended Motion for Sanctions (ECF 269) and Appendix in Support (ECF 270), as well as Judgment Debtors' Response in Opposition to the Banks' Request for Appointment of Substitute Receiver (ECF 287) and Appendix in Support (ECF 288), incorporated here by reference.

[2] If and when the Court holds an evidentiary hearing on the Banks' Amended Motion for Sanctions (*see* ECF Nos. 253, 269, 271, and 309), the Judgment Debtors will (under oath) expose the many half-truths filed by the Banks. Alternatively, if the Court wishes to invite a sur-reply, the Judgment Debtors will file a brief of ten (10) pages or less that exposes the Banks' less than candid representations in their Reply Brief (*see* ECF No. 271). Many of the documents about which the Banks complain have already been produced, are not available to the Judgment Debtors, or simply do not exist – as the Judgment Debtors, through their counsel, Robert Simon, previously explained to the original Receivers on December 30, 2025. *See* ECF 288 at Appx. 37-49 (Ex. B of that appendix).

judgment-debtor entity ("NJDE") must be expressly proscribed. Of course, the Receiver is entitled to investigate and verify these matters, and the Judgment Debtors, through their undersigned counsel, have gone to great lengths to provide full cooperation and transparency.

Ever since attorneys from the Whitaker Chalk law firm filed notices of appearance on October 27, 2025,[3] the Judgment Debtors have cooperated extensively with the Receivers by: filing monthly reports;[4] providing sworn testimony, including detailed disclosures about the corporate structure and organization of the Judgment Debtors *and* the NJDEs (*see* excerpts from the Transcript of Cord Johnson's December 10, 2025, Deposition, previously attached as Ex. A to the appendix filed as ECF 288) (hereafter, "Tr."); and providing detailed responses to the Receivers' follow-up correspondence (*see* ECF 288 at Appx. 39-47). For example, Cord Johnson provided sworn testimony on the following subjects:

1. The Judgment Debtors' willingness and commitment to provide full transparency regarding their dealings with the Banks, the flow of funds borrowed from the Banks, and the structure, operations, and relationship between the Judgment Debtors and NJDEs (Tr. 7-9, *available at* ECF 288, Appx. 5).

2. The Judgment Debtors' compliance with the Court's existing Amended Receivership Order (Tr. 9-12, *available at* ECF 288, Appx. 5-6).

3. The Judgment Debtors' assets and, in particular, the receivables of certain Judgment Debtor entities that served as collateral for the Banks' loans (Tr. 14-15, 72-74 and Ex. A-5 thereto, *available at* ECF 288, Appx. 7, 18-19, 33).

4. Various efforts to restructure the loan in a way that would provide additional collateral (e.g., access to the assets of NJDEs) and the Banks' rejection of those overtures (Tr. 76-79 and 111-112, *available at* ECF 288, Appx. 19-20, 28).

5. The "flow of [borrowed] funds" (an inquiry that should be limited to the $12M actually available for project liquidity, *not* the $40M+ recited in the judgment) and documents in the Banks' possession reflecting that flow (Tr. 15-30, 39, 50-53, 64, and 69-72 and Ex. A-6 thereto, *available at* ECF 288, Appx. 7-11, 13,

---

[3] *See* ECF Nos. 232 and 233.
[4] *See* ECF Nos. 273, 274, 275, 285, 286, 300, 301, 317, and 318.

16, 17-18, 33-37). For example, at page 30 of the transcript (*available at* ECF 288, Appx. 11), Mr. Johnson testified that "none of the $34 million went to Cole or Cord Johnson personally, other than salary as described [at pages 22-26 (ECF 288, Appx. 9-10) of the transcript]," and he explained that he has "never taken a distribution from any one of [the] entities [with which he is associated]." *See also* Tr. 74-76 (*available at* ECF 288, Appx. 19) (no distributions; no fraudulent transfers).[5]

6.      How the Banks' own missteps and lack of cooperation contributed significantly to the failure of the business venture and to Bridgelink's ultimate inability to re-pay the loan (Tr. 54-64, 72-73, *available at* ECF 288, Appx. 14-16, 18).[6]

7.      The NJDEs, their ownership, their structure, and their operations, if any (Tr. 12-14 and 81-111 and Exs. A-4 and A-7 thereto, *available at* ECF 288, Appx. 6-7, 20-28, 31-32, 38).

8.      Cord Johnson's personal finances. Tr. at 115-124.[7]

Since the above-described appendix (ECF 288) was filed on January 14, 2026, the Judgment Debtors, through their undersigned counsel, have continued to respond to the Receiver's inquiries, as shown in the appendix filed herewith:

---

[5] To be clear, the Johnsons had successful business ventures *before* their business dealings with Cadence Bank, and they have helped build successful businesses *since* that relationship soured, including at least one publicly traded company. *See, e.g.*, Tr. 54-59, 108-09 (*available at* ECF 288, Appx. 14-15, 27). For these reasons, among others, the Johnsons had no reason to divert borrowed funds for personal gain and have not done so. Further, as the Banks expressly acknowledged in their initial application for appointment of a receiver, **this is a breach of contract case, _not_ a fraud or fraudulent transfer case**. *See* ECF No. 211, ¶¶ 3-4. The Banks are sophisticated financial players who had every opportunity to negotiate favorable terms, including the terms for any required collateral. Tr. 76-78, *available at* ECF 288, Appx. 19-20. Further, they had every right to exercise (and did, in fact, regularly exercise) oversight and audit functions during the relationship. Tr. 62, 64, 70-72, 107-08 (*available at* ECF 288, Appx. 16, 18, 27). If any of the borrowed funds had been mishandled or misappropriated, such irregularities would have been flagged long ago. They were not, because there was no mishandling or misappropriation of funds – just a failed business venture. Neither the Banks' failure to secure sufficient collateral nor their rank covetousness is a sufficient legal basis to seize assets of a NJDE, to meddle in the affairs of NJDEs that were *not* the subject of the underlying lawsuit, or to overcome the limitations of applicable law as relates to exempt assets or the assets of NJDEs. *See* TEX. BUS. ORGS. CODE § 101.112 (sole remedy against judgment debtor's interest in an LLC is a charging order); Receivership Order (ECF No. 243) at 4, 14-15 (issuing a charging order and mandating compliance with Texas law regarding same); *Krumnow v. Krumnow*, 174 S.W.3d 820, 828 (Tex. App.—Waco 2005, pet. denied) ("A court may appoint a receiver … to preserve or protect **the property in litigation**.") (emphasis added), citing TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6).

[6] All of this was apparently "news" to the original Receivers, who had been led to believe that the Judgment Debtors had absconded with some of the borrowed funds – an utter falsehood with no evidentiary support.

[7] For privacy purposes, these excerpts are not attached hereto. The entirety of the transcript has been provided to the Banks and will be made available to the Court upon request.

---

- Ex. A hereto (Appx. 3-4): March 4, 2026, email correspondence from David Skeels to Andrew Korn, describing efforts to retrieve $163 held by the Comptroller;

- Ex. B hereto (Appx. 5-18): February 27, 2026, email correspondence from David Skeels to Andrew Korn, providing a link to the Judgment Debtors' supplemental document production and an update about every issue that had been raised to date by Mr. Korn, and providing full transparency to the Receiver regarding their plans to restructure certain NJDEs and their attempts to resolve various disputes with other creditors. The attachments included: (i) a Production Log of documents produced by Judgment Debtors (updated 2/27/26), and (ii) a Power Point slide of the proposed restructuring of certain Non-Judgment-Debtor Entities;

- Ex. C hereto (Appx. 19-26): February 16, 2026, email correspondence form David Skeels to Andrew Korn, providing substantive responses to Mr. Korn's various inquiries and attaching for Mr. Korn: (i) the previously-produced List of Exempt Assets for Cole Johnson; and (ii) the previously-produced List of Exempt Assets for Cord Johnson.

As shown, the Judgment Debtors are committed to full disclosure, have produced documents requested by the Receiver (to the extent they exist and are accessible), and will make themselves available for further depositions. They have further committed to supplementing their production as additional documents are requested by the Receiver. By contrast, there are legitimate questions about whether or not the Banks fully cooperated with the prior Receivers' efforts.[8]

**B.      The Banks present no applicable authority that would permit the Court to disregard Texas law regarding exempt property.**

Contrary to the Judgment Creditor's contentions, the Court has no lawful authority to disregard or disallow the Judgment Debtors' Texas exemptions as a discovery sanction or for any reason not expressly permitted by Texas statutory law.  The Judgment Creditors cite *In re Hogan,* 214 B.R. 882 (Bankr. E.D. Ark. 1997) for the proposition that Court should "strike all personal- property and homestead exemptions and permanently bar Cole and Cord Johnson from asserting any exemptions."  There is no authority to grant such relief.  Even the *Hogan* case does not go nearly that

---

[8] The Court's Amended Receivership Order grants exclusive rights to the Receiver to conduct collections-related activities. Nevertheless, the Banks continue to proceed on a parallel track, seeking discovery and taking collections-related action, such as noticing the depositions of Cord Johnson's wife and Cole Johnson's girlfriend. **The Judgment Debtors continue to believe that further clarifications to the Amended Receivership Order would inure to the benefit of everyone involved and have been <u>encouraged by Mr. Korn</u> to seek such clarification**. To that end, *see* ECF 287 at 6-9. The Judgment Debtors also request copies of the reports filed with the Court by the prior Receivers before they resigned.

far. In *Hogan*, the Bankruptcy Court allowed the debtors' homestead exemption in the amount of $99,445.20 and disallowed only the portion resulting from a fraudulent transfer made six (6) days before the petition date. *Hogan*, 214 B.R. 883-887. The Court did not purport to bar the future assertion of other exemptions.

Most importantly, *Hogan* is no longer good law even for the more tailored relief fashioned by that Court. In 2014, the U.S. Supreme Court decided *Law v. Siegel,* 571 U.S. 415, 134 S.Ct. 1188 (2014). The High Court held that federal courts lack inherent power to disregard statutory exemptions on equitable grounds, not even as a sanction for abusive litigation practices. *Siegel*, 571 U.S. at 420-21, 134 S.Ct. at 1194. ("Courts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions. … We have long held that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." (internal citations and quotations omitted). The Court continued: "A debtor need not invoke an exemption to which the statute entitles him; but if he does, the court may not refuse to honor the exemption absent a valid statutory basis for doing so." *Siegel*, 571 U.S. at 424, 134 S.Ct. at 1196. The Court reasoned that when a debtor asserts a state law exemption, applicable state law might provide grounds for disallowance, "but *federal* law provides no authority for bankruptcy courts to deny an exemption not specified in the [Bankruptcy] Code." *Siegel*, 571 U.S. at 425, 134 S.Ct. at 1196-97 (emphasis in original).

Following *Siegel*, the United States Bankruptcy Court for the Northern District of Texas has held federal courts may not disallow a debtor's claim of exemption or amendments to a debtor's prior claim of exemption based upon bad faith, delay, or prejudice to creditors. *In re Saldana*, 531 B.R. 141, 161 (Bankr. N.D. Tex. 2015). Judge Jernigan noted the Supreme Court's holding that state law might provide a mechanism for denying the debtor's right to amend his bankruptcy schedules and to assert a new claim of exemption for his alleged homestead. *Saldana*, 531 B.R. at 162. However, she

concluded that "since Texas law provides no independent avenue for doing so… there is no legal basis to preclude the Debtor from amending his Schedules to assert a homestead exemption … , even at a very late date that was prejudicial to creditors and may have hinted at bad faith." *Saldana*, 531 B.R. at 163.   Judge Jernigan was correct.  Texas law provides no "equitable exception" to the exemptions created by the Texas Constitution and the Texas Property Code.

The Judgment Creditors cite an unpublished trial court order for the proposition that this Court may disallow exemptions as a discovery sanction.[9] Aside from the fact that neither this Court, nor any other, is bound by unpublished trial court orders, the Judgment Creditors drastically overstate the holding in that Order.  The trial court did not disallow the judgment debtor's exemptions *per se*. Nor did the trial court prohibit the judgment debtor from acquiring exempt property in the future and asserting an exemption. Rather, the trial court ruled that since Mr. Baldwin refused to comply with the turnover order by providing documents, he prevented "the Receiver from having evidence that tends to prove or disprove Baldwin's contention that third parties own: (1) personal property in Baldwin's residence and (2) person property Baldwin used." *See* Baldwin Order (Ex. D hereto), Page 7-8 (Appx. 33-34).

The Court continued: "By refusing to provide documents to the Receiver related to these contentions, Baldwin significantly interfered with the Court's ability to: (1) hear evidence on the contentions raised by Baldwin; (2) decide issues of fact raised by Baldwin; and (3) decide questions of law related to ownership."  Since Baldwin refused to provide evidence in support of his claims of exemptions, the Court found that he had no exempt property.  In Texas, debtors bear the initial burden of proving their exemptions. Since Baldwin refused to provide any evidence in support of his claim

---

[9] *See* April 28, 2023, Order Granting Receiver's [i.e., Andrew Korn's] Motion for Sanctions in *The Colony Assets Development, LLC v. American National De-velopment, L.P., Bibold American Development, L.L.C. and William "Bill Baldwin*, Cause No. 09-00877 (134th Jud. Dist. Court, Dallas County), Page 8, n.4, attached hereto as Ex. D (Appx. 27-42) (hereafter, "Baldwin Order"). On information and belief, Mr. Korn shared his anecdotal and fact-specific experience with the Banks, who now ask the Court to apply this novel theory in circumstances where it simply does not apply.

of exemptions, the Court could permissibly find, as a sanction or otherwise, that he had none. The Court relied on the principle that it could draw adverse inferences on issues of fact when a party fails to produce relevant evidence under its control.

This case has nothing to do with *Baldwin*. Here, the Judgment Debtors timely asserted their exemptions by providing detailed lists to the Receivers, by producing thousands of pages of documents, some of which related to the exemptions, and by cooperating with the Receivers to schedule inspections of their residences. The Receiver retains the right to challenge individual exemptions for compliance with the Texas Constitution and the Texas Property Code, but Texas law provides no authority for blanket disallowance of existing or future exemptions.[10]

### III.    CONCLUSION AND PRAYER

For these reasons, the Banks' attempt to sanction the Judgment Debtors, in the face of good faith compliance with the Amended Receivership Order and cooperation with the Receiver, must be denied. Further, to the extent the Court has any questions about the allegations raised by the Banks, it should hold a hearing and permit the Judgment Debtors to respond, under oath, to any such concerns. The Judgment Debtors also request such further or additional relief to which they may be entitled.

---

[10] It is telling that the Banks focus almost all of their efforts on assets that were *not* included as collateral for the loans and to which they have no rights whatsoever, rather than complaining about any inability to locate assets of actual Judgment Debtors, such as Bridgelink Engineering, LLC. This is a tacit admission and recognition of the Judgment Creditors that the Judgment Debtors simply do not have assets to satisfy the judgment.

Dated: March 10, 2026

Respectfully Submitted,

/s/ David A. Skeels
David A. Skeels
State Bar No. 24041925
Email: DSkeels@whitakerchalk.com
Direct line: 817-878-0573

Robert A. Simon
State Bar No. 18390000
Email: rsimon@whitakerchalk.com
Direct line: 817-878-0543

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce St., Suite 3500
Fort Worth, Texas  76102
817.878.0500 Telephone
817.878.0501 Facsimile
**Counsel for Defendants/Judgment Debtors**

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of March 2026, I served this document on all counsel of record via the Court's EMC/CF system.

/s/ David A. Skeels