**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CADENCE BANK F/K/A BANCORPSOUTH BANK AND CENTURY BANK,** | § § § § | |
| **PLAINTIFFS,** | § § | |
| V. | § § | **CIVIL ACTION NO 4:23-CV-00609(BJ)** |
| **BRIDGELINK ENGINEERING, LLC, COLE WAYNE JOHNSON, CORD HENRY JOHNSON, BIGHORN CONSTRUCTION AND RECLAMATION, L.L.C., BIGHORN SAND & GRAVEL LLC, BIGHORN INVESTMENTS AND PROPERTIES, LLC** | § § § § § § § § | |
| **DEFENDANTS.** | § § | |

**APPENDIX IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S
SUPPLEMENT TO AMENDED MOTION FOR SANCTIONS**

| Ex. No. | Document | Pages |
|---|---|---|
| A | March 4, 2026, email correspondence form David Skeels to Andrew Korn | Appx. 003- Appx. 004 |
| B | February 27, 2026, email correspondence from David Skeels to Andrew Korn, with attachments: (i) Power Point Slide of Proposed Ownership Structure for Non-Judgment-Debtor Entities, and (ii) Production Log of documents produced by Judgment Debtors (updated 2/27/26) | Appx. 005- Appx. 018 |
| C | February 16, 2026, email correspondence from David Skeels to Andrew Korn, with attachments: (i) List of Exempt Assets for Cole Johnson; (ii) List of Exempt Assets for Cord Johnson | Appx. 019- Appx. 026 |

| D | April 28, 2023, Order Granting Receiver's [Andrew Korn's] Motion for Sanctions in *The Colony Assets Development, LLC v. American National Development, L.P., Bibold American Development, L.L.C. and William "Bill Baldwin*, DC 09-00877 (134th Jud. Dist. Court, Dallas County) | Appx. 027 – Appx. 042 |

Dated: March 10, 2026

Respectfully Submitted,

*/s/ David A. Skeels*
David A. Skeels
State Bar No. 24041925
Email: DSkeels@whitakerchalk.com
Direct line: 817-878-0573

Robert A. Simon
State Bar No. 18390000
Email: rsimon@whitakerchalk.com
Direct line: 817-878-0543

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce St., Suite 3500
Fort Worth, Texas  76102
817.878.0500 Telephone
817.878.0501 Facsimile

**Counsel     for     Defendant/Judgment Debtors**

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of March 2026, I served this document on all counsel of record via the Court's EMC/CF system.

*/s/ David A. Skeels*

---

**APPENDIX IN SUPPORT OF RESPONSE TO SUPPLEMENTAL AMENDED MOTION FOR SANCTIONS   PAGE 2**
DM# 816939 v.1

*Appx.002*

**From:** David Skeels
**Sent:** Wednesday, March 4, 2026 3:39 PM
**To:** andrew@receiverandrewkorn.com
**Cc:** Robert A. Simon <rsimon@whitakerchalk.com>; Caroline Tower <ctower@whitakerchalk.com>
**Subject:** RE: Potential Conference [Cadence et al. v. Bridgelink et al.]

Mr. Korn,

We wanted to provide an update on the unclaimed property below:



**53-120**
(Rev. 7-15/8)

## Texas Unclaimed Property
## Owner Claim Form

Claim ID
26935874

### D. PROPERTY INFORMATION

| # | Owner | Property ID | Company/Security Name | Year | Type of Property | |
|---|-------|-------------|----------------------|------|------------------|---|
| 1) | COLE W JOHNSON BRIDGELINK INVESTMENTS LLC 310 W WALL ST STE 910 MIDLAND, TX 797015119 | 103315738 | KEYBANK NTL ASSN | 2025 | CHECKING ACCOUNT | |
| 2) | COLE JOHNSON 8262 HWY 75 SOUTH HUNTSVILLE, TX 773400000 | 19371248 | LOWES COMPANIES INC & SUBS | 2007 | WAGES, PAYROLL, OR SALARY | $ |
| 3) | COLE JOHNSON 1301 OLD TIN TOP RD WEATHERFORD, TX 760876591 | 85863374 | TXU ENERGY RETAIL CO LLC | 2023 | UTILITY DEPOSIT | $ |
| **GRAND TOTAL of PROPERTY** | | | | | Cash: | |

1. Keybank ($0.23): My client is still working to track this one down. The 310 W Wall St address does not appear to be associated with any Keybank account, so he is working through a search with them using other methods, such as SSN or other identifier.

2. Lowes Companies ($110): My client was not able to obtain an old W-2 but was able to get a Proof of Employment letter showing the dates of his employment. Once I receive and bates-number that document, we will provide it to you. In the meantime, he will keep working to secure a W-2, just in case the Comptroller does not accept the Proof of Employment letter.

1

*Exhibit A*                    *Appx.003*

3. TXU Energy ($53.55): I understand TXU will be sending to my client a statement that shows the account history, including the refund of the utility deposit. Unfortunately, TXU cannot (or will not) send it via email. So, my client is waiting to receive it via snail mail. TXU indicated that it would take 7-10 days and that it would be going out today.

So, in summary:
1. Keybank: still in process
2. Lowes: in process; we hope that the Comptroller will find the Proof of Employment letter to be sufficient
3. TXU: we expect to have the proof required by the Comptroller in 7-10 days.

Lastly, I am working to get you documentation related to Mr. Cord Johnson's membership agreement with the Ridglea Country Club, including, if possible, related Bylaws, etc. of the Club. I hope to get that to you shortly.

Respectfully,

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC
817.878.0573 Direct

2

*Exhibit A*                                                    *Appx.004*

**Caroline Tower**

| | |
|---|---|
| **To:** | David Skeels |
| **Subject:** | RE: Potential Conference [Cadence et al. v. Bridgelink et al.] |

**From:** David Skeels
**Sent:** Friday, February 27, 2026 11:59 PM
**To:** andrew@receiverandrewkorn.com
**Cc:** Robert A. Simon <rsimon@whitakerchalk.com>; Caroline Tower <ctower@whitakerchalk.com>
**Subject:** Potential Conference [Cadence et al. v. Bridgelink et al.]

Mr. Korn,

You may access our supplemental production at this link: https://whitakerchalk.sharefile.com/d-s05720e54238441bfb69a6052f7b9231d. In some instances, we have redacted sensitive information. At your request, we will be happy to provide copies of any such documents in unredacted form. Alternatively, we can share that information with you over the phone. That could allow us to minimize circulation of sensitive information.  I have also attached an updated version of our production log, for your ease of reference.

Regarding potential depositions of Cord's wife and Cole's girlfriend … to my knowledge, they have not yet been served. Regardless, even if they are going to be deposed, you had suggested a date in April, and I thought we had agreed that April dates would be preferable if/when the depositions go forward. To be clear, we do not represent them and have not agreed to accept service on their behalf. But if you or the Banks wish to discuss cooperative efforts to schedule those depositions for mutually agreeable dates, times, and locations, we may be able to help facilitate that. Also, we have not conceded or implied "that the Johnson's significant others are alter egos of the Johnsons." They certainly are not, and we categorically and unequivocally reject any suggestion to the contrary. Under Fed. R. Civ. P. 45(d)(3)(B), any "person … affected by a subpoena" may move to quash or modify a subpoena. My clients are certainly "affected by" any subpoena directed to their significant others, and they are "affected by" any subpoena issued in connection with efforts to satisfy a judgment against them as Judgment Debtors. So, for at least these reasons, we have a vested interest in the process.

As to the other issues about which we have been maintaining a dialogue …

- Demand No. 1 (2/5/26): "Notice to Cole Wayne Johnson of [alleged] failure to comply with the Receivership Order" re $163 held by comptroller. We had proposed to pay that amount rather than going through the Comptroller's office. You rejected that proposal. Accordingly, Cole Johnson and/or individuals acting at his direction have taken appropriate steps to claim those funds, as reflected in documents that have now been produced to you. FYI: The state requires a document from each company linking Cole directly to the entity. So, for example, from Lowe's, Cole needed an old pay stub or some other similar documentation showing Cole is the correct "Cole Johnson" and the rightful owner of those funds. The client has now reached out via telephone to Lowe's Corporate HR and to the other entities involved to obtain the information we need. It has been a process, but Cole

1

*Exhibit B*                                    *Appx.005*

expects to have all required documentation early next week. Once I do, I will email you with proof of the completed form and submission.

- Demand No. 2 (2/6/26): "Notice to Cord Henry Johnson of [alleged] failure to comply with the Receivership Order" re Cord's and Cassie's vehicles. We previously provided information on the three vehicles. We have now provided additional documentation, including the lease agreement for the Ford F-150 and information regarding payments made on the pickup truck, which is used by him for work/employment purposes and is presently his sole means of transportation. Please let us know whether you require further documentation.

- Demand No. 3 (2/9/26): "[alleged] Violation of Charging Order, Demand for Delivery of distributions made after October 22, 2025 by LLCs". We respectfully disagree with your characterization of those transactions as "distributions" or "disguised distributions." We have provided requested documentation reflecting three payments made to Whitaker Chalk.

- Demand No. 4 (2/11/26): Receiver's Levy. Please note that no judgment debtors own stock in Bimergen. In the interest of full disclosure … I understand that Bimergen is now trading on the NYSE and that it is now in a position to start compensating Cole Johnson. We would like to discuss those wages with you.

- Demand No. 5-1: "Vehicles owned or leased by Judgment Debtors Cole Johnson and Cord Johnson" requesting delivery of horse trailers and Ford F-150 and additional information about the F-150. We previously disclosed and specifically identified the horse trailers as exempt assets in an index that was timely provided to the previous Receivers. We never received any pushback from them. We have now provided bates-numbered versions of those indices. We understand the trailers are exempt, pursuant to Texas Property Code § 42.002.

- Demand No. 5-2: "Depositions of Spouse and Girlfriend" See above. Also, we would recommend reviewing all material previously provided and having a deposition of either Cole or Cord Johnson to determine if a deposition of spouses would even be necessary.

- Demand No. 5-3: "Ridglea Country Club" … As previously discussed, Cole Johnson does not have an equity membership. As to Cord's membership, he has requested a copy of his membership agreement, and we expect to have that in hand by next week. We will promptly provide you with a copy.

- Demand No. 5-4: "Notice to Recurring Creditors" … We previously produced a list of other litigations, though Cole and Cord individually were not defendants or individual debtors in all of those actions. We are working to identify that bates-numbered document and to create a list of creditors of Cole and Cord Johnson. Per our recent discussion of "recurring creditors," I now understand you are referring to monthly bills: utilities, internet, water, etc. We have provided proposed budgets for Cole and Cord which describe these monthly expenditures in general terms (discussed further below). If you need names and account numbers of specific vendors, we'll be happy to provide that information.

In previous correspondence, we provided copies of Cord Johnson's testimony about the structure of, and the relationships between, the Judgment Debtors and the NJDEs, citing ECF No. 287 at 5-7 and the appendix filed in support thereof (ECF No. 288 … particularly the excerpts from Cord Johnson's deposition at Ex. A and

2

*Exhibit B*                                                                 *Appx.006*

Exhibits A-4, A-5, A-6, A-7, and B thereto). Have you had an opportunity to review those materials? If so, do you have any follow-up questions that we can answer?  Additionally, Cord Johnson would be open to sitting down in a formal or informal setting to answer any questions you may have.

A few final notes …

**Budget**: At your suggestion, we have now produced documents reflecting proposed budgets for Cole and Cord personally. We would like to get your feedback and, hopefully, your blessing before we present these budgets to Judge Cureton for his consideration.  We need clarity on how the Johnsons may receive wages to provide for their basic needs.

**Restructuring and Settlement(s):** The Johnson Family has been working with a consultant to evaluate a comprehensive restructuring of certain entities, while also considering the orderly dissolution of companies that no longer serve a meaningful business purpose, including a number of Special Purpose Vehicles (SPVs) of the type commonly utilized in development.

To ensure this process is conducted thoughtfully and transparently, they have engaged a Chief Restructuring Officer (CRO) and is working with an independent third-party advisory firm to assist in these efforts, to simplify the corporate structure, and to help negotiate the settlement and resolution of outstanding liabilities with creditors. The objective of these efforts is to streamline the enterprise, resolve open obligations in an organized manner, and position the platform to continue building long-term value.

In the interest of full transparency, Robert and I would like to discuss these preliminary plans with you before presenting them to Judge Cureton for his consideration. Attached please find materials outlining the initial framework under review.

Please let us know your availability to discuss further.

Respectfully,

 **DAVID SKEELS**  |  Member
Whitaker Chalk Swindle & Schwartz PLLC
817.878.0573 Direct

3

*Exhibit B*                                      *Appx.007*

*Bighorn Construction & Reclamation LLC / Bighorn Construction ("BCR") – Chapter 7 Debtor / Trustee: Marilyn Garner*

| | | |
|---|---|---|
| 10/30/25 | Bank Statements 2022 | **Bancorp South**  JOHNSON-R  000091-000098 |
| 10/30/25 | | **Cadence**  Oct. – Dec 2022  JOHNSON-R  000099-000101 |
| 11/13/25 | | **Cadence**            Oct. 2022  JOHNSON-R-JD  000001-000008, JOHNSON-R-JD 000042 |
| 11/13/25 | | Nov. 2022  JOHNSON-R-JD  000019-000026, JOHNSON-R-JD 000041 |
| 11/13/25 | | Dec 2022  JOHNSON-R-JD  000032-000035, JOHNSON-R-JD 000043 |
| 10/30/25 | | **CCB**  Jan – Dec 2022 & close acct   JOHNSON-R 000102-000116 |
| 10/30/25 | | Oct. 2022  JOHNSON-R-JD  000009-000011 |
| 11/13/25 | | Nov. 2022  JOHNSON-R-JD  000027-000029 |
| 11/13/25 | | Dec. 2022  JOHNSON-R-JD  000036-000038 |
| 11/13/25 | | Dec 2022  JOHNSON-R-JD  000044 |
| 10/30/25 | | **Key Bank**  Jan -Oct 2022   JOHNSON-R  000117-000126 |
| 11/13/25 | | Oct 2022   JOHNSON-R-JD  000012-000015 |
| 10/30/25 | | **Vista Bank** – Jan. – Dec 2022  JOHNSON-R 000127-000138 |
| 11/13/25 | | Oct 2022  JOHNSON-R-JD  000016 -0000158, OHNSON-R-JD 000045 |
| 11/13/25 | | Nov. 2022  JOHNSON-R-JD  000030-000031, JOHNSON-R-JD 000046 |
| 11/13/25 | | Dec 2022  JOHNSON-R-JD  000039-000040, JOHNSON-R-JD 000047 |
| 11/13/25 | Entity Docs | Amended and Rested LLC Company Agreement JOHNSON-R-JD 002468-002472 and JOHNSON-R-JD 005066-005070 |
| 10/31/25 | Financials 2022 | Balance Sheet  JOHNSON-R  000236-000237 |
| 10/31/25 | | Profit & Loss JOHNSON-R  000238-000240 |
| 11/13/25 | | Fixed Financials by State JOHNSON-R-JD  002658 |
| 11/13/25 | | General Ledger JOHNSON R-JD 002659-002986 |
| 11/13/25 | | Fixed Financial Assets JOHNSON_R_JD 002619- |
| 11/13/25 | | Profit and Loss JOHNSON-R-JD  003551 |
| 11/13/25 | | Journal Entries JOHNSON-R-JD 002987-003550 |
| 11/13/25 | | Balance Sheet  JOHNSON-R-JD  002473-002474 |
| 11/13/25 | | Balance Sheet Detail JOHNSON-R-JD  002475-002610 |

DM798688 v.3

*Exhibit B*                    *Appx.008*

| | | |
|---|---|---|
| 11/13/25 | | Balance Sheet Details Assets from QB 2022 JOHNSON-R-JD 0015-002612 |
| 11/13/25 | | Balance Sheet Details Liabilities from QB 2022 JOHNSON-R-JD 002613-002618 |
| 11/13/25 | | Profit and Loss Detail JOHNSON-R-JD  003554-003701 |
| 10/31/25 | Financials 2023 | Balance Sheet  JOHNSON-R  000241 |
| 10/31/25 | | Profit & Loss JOHNSON-R  000242 |
| 11/13/25 | | General Ledger JOHNSON-R-JD  003759-003792 |
| 11/13/25 | | Profit and Loss JOHNSON-R-JD 003817 |
| 11/13/25 | | Journal JOHNSON-R-JD 003793-003816 |
| 11/13/25 | | Fixed Assets JOHNSON-R-JD 003756-003757 |
| 11/13/25 | | Fixed Assets by State JOHNSON-R-JD  003758 |
| 11/13/25 | | Detail Liability from QB 2023 JOHNSON-R-JD 003754-003755 |
| 11/13/25 | | Balance Sheet Detail Assets from QB 2023 JOHNSON-R-JD 003752-003753 |
| 11/13/25 | | Balance Sheet Details JOHNSON-R-JD 003703-003751 |
| 11/13/25 | | Balance Sheet JOHNSON-R-JD 003702 |
| 11/13/25 | Sales Tax Reports 2022 | Jan – Sept. JOHNSON-R-JD 003819-003863 |
| 11/13/25 | Tax Documents | 2021 Federal Tax Return  JOHNSON-R-JD 003864-0040221 |
| 11/20/25 | | 2022 Federal Tax Return  JOHNSON-R-JD 005261-005416 |
| | | 2023 Federal Tax Return JOHNSON-R-JD  005417-005537 |
| | | Texas Franchise Tax for 2023 through 2025 JOIHNSON-R-JD  005538-005539 |
| | | Texas Sales and Use Tax for October, November and December 2021 JOHNSON-R-JD  0005568-005569, JOHNSON-R-JD 005572-JOHNSON-R-JD 005573, JOHNSON-R-JD  005576-005577 |
| | | Texas Sales and Use Tax for January through December 2022  JOHNSON-R-JD  005540-005541, JOHNSON-R-JD  005544-005545, JOHNSON-R-JD005548-005549, JOHNSON-R-JD 005552-005553, JOHNSON-R-JD 005556, 005557,  JOHNSON-R-JD  005560-005561, JOHNSON-R-JD 005562-005563, JOHNSON-R-JD  005564-005565, JOHNSON-R-JD  005566-005567, JOHNSON-R-JD 005570-005571, JOHNSON-R-JD 005574-005575, JOHNSON-R-JD  005578-005579 |
| | | Texas Sales and Use Tax for January through May 2023 JOHNSON-R-JD 005542-005543 JOHNSON-R-JD 005546-005547 , JOHNSON-R-JD 005550-005551, JOHNSON-R-JD 005554-005555, JOHNSON-R-JD 005558-005559 |
| 11/13/25 | Bankruptcy | JOHNSON-R-JD 000048-002467 |

DM798688 v.3

| *Bridgelink Engineering* | | |
|---|---|---|
| 10/30/25 | Bank Statements 2022 | Regions Bank Feb – Aug. 2022 JOHNSON-R  000192-000206 |
| 11/13/25 | | Regions Bank Nov 2022 JOHNSON-R-JD 004024-004025 |
| 11/13/25 | | Regions Bank Dec 2022 JOHNSON-R-JD   004022-004023 |
| 11/13/25 | Bank Statements 2023 | Regions Bank December 2022-March 2023  JOHNSON-R-JD  004028-004029 |
| 11/13/25 | | June 2023 Chase Bank JOHNSON-R-JD 004036 |
| 11/13/25 | | Regions Bank July 2023 JOHNSON -R-JD 004030-004031 |
| 11/13/25 | | Regions Bank August 2023 JOHNSON-R-JD  004026-004027 |
| 11/13/25 | | Regions Bank Sept. 2023  JOHNSON-R-JD  004034-004035 |
| 11/13/25 | | Regions Bank Oct. 2023 JOHNSON-R-JD  004032-004033 |
| 11/6/25 | Borrowing Base Certificates 2002 | March 2022, June-Dec 2022  JOHNSON-R  000255-000262 |
| 11/13/25 | | March 2022, June-Dec 2022  JOHNSON-R-JD   004037-004044 |
| 11/13/25 | | March 2022, June-Dec 2022  JOHNSON-R-JD 005100-005104, 005120-005123 |
| 11/13/25 | Financials 2022 | Balance Sheet Detail  JOHNSON-R-JD 004047 – 004113 |
| 11/13/25 | | Fixed Assets JOHNSON-R-JD 004130 |
| 11/13/25 | | Balance Sheet Detail Assets from QB 2002  JOHNSON-R-JD  004114-004115. |
| 11/13/25 | | Balance Sheet Detail Liabilities from QB 2022 JOHNSON-R-JD 004116-004129 |
| 11/13/25 | | Balance Sheet JOHNSON-R-JD  004045-004046 |
| 11/13/25 | | Fixed Assets by State JOHNSON-R-JD 004131 |
| 11/13/25 | | General Ledger JOHNSON-R-JD 004132-004275 |
| 11/13/25 | | Journal JOHNSON-R-JD 004276-004523 |
| 11/13/25 | | Profit & Loss JOHNSON-R-JD  004524-00004526 |
| 11/13/25 | | Profit & Loss Detail JOHNSON-R-JD  004527-004584 |
| 11/13/25 | | Sales by State JOHNSON-R-JD 004585-004590 |
| 11/13/25 | Financials 2023 | Balance Sheet Details from QB 2023  JOHNSON-R-JD  004609 |
| | | Balance Sheet Liabilities from QB 2023  JOHNSON-R-JD  004610-004612 |
| | | Fixed Assets JOHNSON-R-JD  004613 |
| | | Balance Sheet JOHNSON-R-JD  004591-004592 |
| | | Balance Sheet detail JOHNSON-R-JD 004593-004608 |
| | | Fixed Assets by State JOHNSON-R-JD  004614 |
| | | Journal JOHNSON-R-JD  004646-004689 |
| | | General Ledger JOHNSON-R-JD 004615-004645 |
| | | Profit and Loss  JOHNSON-R-JD 004690-004691 |

*Exhibit B*                                                                                      *Appx.010*

| | | Profit and Loss Detail JOHNSON-R-JD 004692 -004701 |
|---|---|---|
| | | Sales by State JOJHNSON-R-JD 004702 |
| 11/20/25 | Tax Documents | Texas Franchise Tax for 2023 through 2025 JOHNSON-R-JD 005583 |
| | | Texas Sales and Use Tax for December 2021  JOHNSON-R-JD 005602 |
| | | Texas Sales and Use Tax for March, June, September and December 2022 JOHNSON-R-JD 005584-005585, JOHNSON-R-JD 005590-005591, JOHNSON-R-JD 005596-005597, JOHNSON-R-JD 005604-005605 |
| | | Texas Sales and Use Tax for March, June, September and December 2023 JOHNSON-R-JD 005586-005587, JOHNSON-R-JD 005592-005593, JOHNSON-R-JD 005598-005599, 005606-005607 |
| | | Texas Sales and Use Tax for March, June and September 2024  JOHNSON-R-JD 005588-005589, JOHNSON-R-JD 005594-005595, JOHNSON-R-JD 005600-005601 |
| | | Texas Sales and Use Tax History JOHNSON-R-JD  005608 |
| 11/13/25 | Organizational Documents | Amended and Restated LLC Agreement JOHNSON-R-JD  004703-4707 and JOHNSON-R-JD  005022-005026 |
| 12/30/25 | Financials 2021 | Consolidated Financial Statement JOHNSON-R-JD 005777 - 005792 |
| **Bighorn Investment & Properties LLC** | | |
| 10/30/25 | Bank Statements 2022 | Bancorp South / Cadence 2022 & January 2023  JOHNSON-R  000139-000187 |
| 10/30/25 | Bank Statements 2023 | Bankcorp South/Cadence  JOHNSON-R  000188-000191 |
| 11/13/25 | Financials 2022 | Balance Sheet Asset Details QB 2022 JOHNSON-R-JD  004720-004728 |
| 11/13/25 | | Fixed Asset Listing JOHNSON-R-JD  004733 |
| 11/13/25 | | Balance Sheet – JOHNSON-R-JD 004708-004719 |
| 11/13/25 | | Balance Sheet Liability Detail from QB 2022  JOHNSON-R-JD 04729-004732 |
| 11/13/25 | | Fixed Assets JOHNSON-R-JD  004734-004767 |
| 11/13/25 | | Fixed Assets by State JOHNSON-R-JD  004768-004777 |
| 11/13/25 | | General Ledger  JOHNSON-R-JD 004778-004814 |
| 11/13/25 | | Journal Entries JOHNSON-R-JD  004815-004863 |
| 11/13/25 | | Profit and Loss  JOHNSON-R-JD   004864-004865 |
| 11/13/25 | | Profit and Loss Detail JOHNSON-R-JD  004866-004873 |
| 11/13/25 | Financials 2023 | Balance Sheet Asset Details QB 2023 JOHNSON-R-JD  004891 |
| 11/13/25 | | Fixed Asset Listing JOHNSON-R-JD  004896 |
| 11/13/25 | | Balance Sheet – JOHNSON-R-JD 004874-004878 |

DM798688 v.3

*Exhibit B*                                                                                                          *Appx.011*

| | | |
|---|---|---|
| 11/13/25 | | Balance Sheet Detail – JOHNSON-R-JD 004879-004890 |
| 11/13/25 | | Balance Sheet Detail Liabilities from QB 2023  JOHNSON-R-JD 04892-004895 |
| 11/13/25 | | Fixed Assets JOHNSON-R-JD  004897-004898 |
| 11/13/25 | | Fixed Assets by State JOHNSON-R-JD  004899 |
| 11/13/25 | | General Ledger  JOHNSON-R-JD 004900-004913 |
| 11/13/25 | | Journal JOHNSON-R-JD  004914-004916 |
| 11/13/25 | | Profit and Loss  JOHNSON-R-JD   004917 |
| 11/13/25 | | Profit and Loss Detail JOHNSON-R-JD  004918 |
| 11/13/25 | Organizational Documents | LLC Agreement JOHNSON-R-JD  004919-004950 and JOHNSON-R-JD 005034-005065 |
| 11/20/25 | Tax Documents | 2022  Tax Return JOHNSON-R-JD  005610-005641 |
| | | 2023 Tax Return  JOHNSON-R-JD  005642-005672 |
| | | Texas Franchise Tax for 2021 JOHNSON-R-JD 005609 |
| ***Bighorn Sand & Gravel*** | | |
| 11/13/25 | Organizational Documents | Written Consent of Sole Member in Lieu of Meeting with exhibits  JOHNSON-R-JD  004951-004962- |
| 11/20/25 | Tax Documents | Texas Franchise Tax for 2022 through 2024  JOHNSON-R-JD 005673 |
| 11/13/25 | | Company Agreement JOHNSON-R-JD  004963-004966 |
| 11/13/25 | | Operating Agreement of Enhanced Midstream JOHNSON-R-JD 004967 - 004978 |
| 11/13/25 | | Company Agreement of Bridgelink Power Holdings, LLC JOHNSON-R-JD 004979-00005011 |
| 11/13/25 | | Company Agreement of Bridgelink Power, LLC JOHNSON-R-JD 005012-005016 |
| 11/13/25 | | Company Agreement for Bridgelink Power Operating, LLC  JOHNSON-R-JD 005017-005021 |
| 11/13/25 | | Certificate of Formation for Bridgelink Commodities, LLC  JOHNSON-R-JD 005027-005028 |
| 11/13/25 | | Company Agreement for Bridgelink Cave Springs, LLC  JOHNSON-R-JD 005029-005033 |
| 11/13/25 | | Amended and Restated Company Agreement for Bridgelink Investments, LLC JOHNSON-R-JD  005071-005076 |

DM798688 v.3

*Exhibit B*                                                                                     *Appx.012*

| | | |
|---|---|---|
| 11/13/25 | | Operating Agreement of Bridgelink Renewable Energy Investments II, LLC JOHNSON-R-JD  005077 – 005085 |
| 11/13/25 | | Operating Agreement of Bridgelink Renewable Energy Development II, LLC JOHNSON-R-JD  005086-005094 |
| 11/13/25 | | Company Agreement for Bridgelink Renewable Energy Investments, LLC JOHNSON-R-JD  005095-005099 |
| **Cole Johnson** | | |
| 10/28/25 11/13/25 | 2022 Personal Tax Return | JOHNSON-R 000001-000026 JOHNSON-R-JD 005150-005175 |
| 10/28/25 11/13/25 | 2023 Personal Tax Return | JOHNSON-R 000053-000070 JOHNSON-R-005176-005193 |
| 11/13/25 | 2021 W-2 | JOHNSON-R-JD  005130 |
| 11/13/25 | 2023 W-2 from Bridgelink Investments, LLC | JOHNSON-R-JD  005126 |
| 11/13/25 | 2022 W-2 from Bridgelink Investments, LLC | JOHNSON-R-JD 005129 |
| 11/13/25 | 2022 K-1 from Bridgelink Power Holdings, LLC | JOHNSON-R-JD 005148 |
| 11/13/25 | 2022 K-1 from Bighorn Investments and Properties, LLC | JOHNSON-R-JD 005147 |
| 11/13/25 | 2022 K-1 from Enhanced Midstream, LLC | JOHNSON-R-JD 005149 |
| 11/13/25 | 2023 K-1 from Bridgelink Power Holdings, LLC | JOHNSON-R-JD 005195 |
| 11/13/25 | 2023 K-1 from Bighorn Investments and Properties, LLC | JOHNSON-R-JD 005194 |
| 11/13/25 | 2023 K-1 from Enhanced Midstream, LLC | JOHNSON-R-JD 005196 |
| 11/20/25 | Reliant bill for Oct. 2025 | JOHNSON-R-JD 005674-005677 |
| 11/20/25 | List of Tangible Personal Property, Exemptions Claimed and Non-Debtor's personal property | JOHNSON-R-JD 005678-005679 |
| 12/30/25 | Chase Bank Account | JOHNSON-R-JD 005793 |

DM798688 v.3

*Exhibit B*                                                                 *Appx.013*

| 2/27/26 | Personal and LLC' expenses | JOHNSON-R-JD 005813 |
|---|---|---|
| 2/27/26 | Texas Unclaimed Property Owner Claim Form | JOHNSON-R-JD 005852 - 005853 |
| 2/27/26 | 2024 W-2 | JOHNSON-R-JD 005832 - 005841 |
| 2/27/26 | 2025 W-2 | JOHNSON-R-JD 005842 - 005851 |
| *Cord Johnson* | | |
| 10/28/25<br>11/13/25 | 2022 Personal Tax Return | JOHNSON-R 000027-000052<br>JOHNSON-R-JD  005197-005222 |
| 10/28/25<br>11/13/25 | 2023 Personal Tax Return | JOHNSON-R 000071-000090<br>JOHNSON-R-JD  005223-005242 |
| 11/13/25 | 2021 W-2 | JOHNSON-R-JD  005125 |
| 11/13/25 | 2022 W-2 from Bridgelink Investments, LLC | JOHNSON-R-JD 005127 |
| 11/13/25 | 2023 W-2 from Bridgelink Investments, LLC | JOHNSON-R-JD 005128 (pulled from BSG document folder) |
| 12/1/25 | 2023 W-2 from Bridgelink Investments, LLC | JOHNSON-R-JD 005735-005744 (pulled from Cord's document folder) |
| 11/13/25 | 2022 K-1 from Bighorn Investments and Properties, LLC | JOHNSON-R-JD 005243 |
| 11/13/25 | 2022 K-1 from Bridgelink Power Holdings, LLC | JOHNSON-R-JD 005244 |
| 11/13/25 | 2022 K-1 from Enhanced Midstream, LLC | JOHNSON-R-JD 005245 |
| 11/13/25 | 2023 K-1 from Bighorn Investments and Properties, LLC | JOHNSON-R-JD  005246 |
| 11/13/25 | 2023 K-1 from Bridgelinik Power Holdings, LLC | JOHNSON-R-JD  005247 |
| 11/13/25 | 2023 K-1 from Enhanced Midstream, LLC | JOHNSON-R-JD  005248 |
| 11/13/25 | Truste Agreement for The Henry Revocable Trust | JOHNSON-R-NJDE  000001-000008 |
| 11/20/25 | ATT Internet for Oct. 2025 | JOHNSON-R-JD 005570-005571 |
| 11/20/25 | Atmos Energy for Sept. 2025 | JOHNSON-R-JD-005698-005699 |

DM798688 v.3

*Exhibit B*                                                      *Appx.014*

| Date | Description | Bates |
|---|---|---|
| 11/20/25 | Deed for 1677 Center Point Rd | JOHNSON-R-JD 005680-005697 |
| 11/20/25 | Deed Of Trust for 127 Trace Dr., Weatherford | JOHNSON-R-JD 005702-005730 |
| 11/20/25 | Horse Trailer Title | JOHNSON-R-JD 005731-005732 |
| 11/20/25 | List of Tangible Personal Property and Spouse's Personal Property | JOHNSON-R-JD  005733-005734 |
| 12/1/25 | Pre Marital Agreement | JOHNSON-R-JD 005745-005774 |
| 12/10/25 | Lease for Ford Truck | JOHNSON-R-JD 005776- |
| 12/30/25 | Key Bank Statement | JOHNSON-R-JD 005794 - 005796 |
| 2/27/26 | Expenses | JOHNSON-R-JD 005814 |
| 2/27/26 | 2026 W-4 | JOHNSON-R-JD 005808 - 005812 |
| 2/27/26 | Power of Attorney for Transfer of Ownership of Motor Vehicle | JOHNSON-R-JD 005797 - 005798 |
| 2/27/26 | Ford F150 Payments Ledger | JOHNSON-R-JD 005799 |
| 2/27/26 | Kubota Mower Payment Ledger | JOHNSON-R-JD 005800 - 005802 |
| 2/27/26 | Kubota Tractor Payment Ledger | JOHNSON-R-JD 005803 - 005805 |
| 2/27/26 | Ford F150 Transaction Confirmations | JOHNSON-R-JD 005814 |
| 2/27/26 | Closing Disclosure for Granbury Property | JOHNSON-R-JD 005815 - 005831 |
| **MISC.** | | |
| 10/31/25 | Quarterly Compliance 2022 | JOHNSON-R 000243-000245 |
| 10/31/25 | | JOHNSON-R 000246-000248 |
| 10/31/25 | | JOHNSON-R 000249-000251 |
| 10/31/25 | | JOHNSON-R 000252-000254 |
| 11/13/25 | | JOHNSON-R-JD 005255-005257 |
| 11/13/25 | | JOHNSON-R-JD  005252-005254 |
| 11/13/25 | | JOHNSON-R-JD  005258-005260 |
| 11/13/25 | | JOHNSON-R-JD  005249-005251 |
| 11/13/25 | | Form of  Compliance Certificate JOHNSON-R-005111-005113 |
| 11/13/25 | | JOHNSON-R-JD 005105-005107 |
| 11/13/25 | | JOHNSON-R-JD  005108-005113 |
| 11/13/25 | | JOHNSON-R-JD  005114-005116 |

DM798688 v.3

*Exhibit B*                                                                                    *Appx.015*

| | | |
|---|---|---|
| 11/13/25 | | JOHNSON-R-JD  005117-005119 |
| 12/1/25 | Litigation | JOHNSON-R-JD 005775 |
| 11/6/25 | Organizational Structure | JOHNSON-R 000263 |
| 11/13/25 | Bridgelink Engineering and Affiliated Entities Combined Financial Statements – Reissued 12/31/21 | JOJHNSON-R-JD  005131-005146 |
| 2/27/26 | Synchrony  Trailer Direct Ledger | JOHNSON-R-JD 005806 - 005807 |
| C&C Johnson Holdings, LLC – Non-Judgment-Debtor Entity | | |
| 11/13/25 | Company Agreement for C&C Johnson Holdings, LLC | JOHNSON-R-NJDE  000548-000578 |
| 11/13/25 | Unanimous Consent of Managers | JOHNSON-R-NJDE  000076-000077 |
| Triangle 40 Ranch, LLC – Non-Judgment-Debtor Entity | | |
| 11/13/25 | Plat Survey of Triagle 40 Ranch | JOHNSON-R-NJDE 000579 |
| 11/13/25 | Entity Details for Delaware LLC | JOHNSON-R-NJDE  000580 |
| 11/13/25 | Company Agreement for Triangle 40 Ranch, LLC | JOHNSON-R-NJDE 000514-000547 |
| 11/13/25 | Company Agreement for Triangle 40 Ranch, LLC | JOHNSON-R-NJDE 000009-000042 |
| Enhanced Mid11/13/25stream, LLC – Non-Judgment-Debtor Entity | | |
| 11/13/25 | 2022 Balance Sheet Detail | JOHNSON-R-NJDE 000082-000131 |
| 11/13/25 |  2022 Balance Sheet | JOHNSON-R-NJDE  000078-000081 |
| 11/13/25 | 2023 Balance Sheet | JOHNSON-R-NJDE 000132-000136 |
| 11/13/25 | 2023 Balance Sheet Detail | JOHNSON-R-NJDE  000137-000164 |
| 11/13/25 | 2022 Fixed Assets | JOHNSON-R-NJDE  000165-000166 |
| 11/13/25 | 2022 General Ledger | JOIHNSON-R-NJDE 000167-000363 |
| 11/13/25 | 2023 General Ledger | JOHNSON-R-NJDE 000364-000503 |
| 11/13/25 | 2022 Profit and Loss | JOHNSON-R-NJDE  000504-000506 |
| 11/13/25 | 2023 Profit and Loss | JOHNSON-R-NJDE  000507-000509 |

DM798688 v.3

*Exhibit B*                                                                 *Appx.016*

| 11/13/25 | First Amendment and Addendum to the Company Operating Agreement for Enhanced Midstream, LLC | JOHNSON-R-NJDE  000510-000513 |
|---|---|---|
| 11/20/25 | 2022 Tax Return | JOHNSON-R-NJDE   000600-000631 |
| 11/20/25 | 2023 Tax Return | JOHNSON-R-NJDE  000647-000679 |
| Bridgelink Power Holdings, LLC – Non-Judgment-Debtor Entity | | |
| 11/13/25 | Company Agreement for Bridgelink Power Holdings, LLC | JOHNSON-R-NJDE 000043-000075 |
| 11/20/25 | 2022 Tax Return | JOHNSON-R-NJDE 000581-000599 |
| 11/20/25 | 2023 Tax Return | JOHNSON-R-NJDE  000632-000646 |
| Johnson River Ranch  - Non-Judgment Debtor Entity | | |
| 2/27/26 | Payment Confirmation posted 10/27/25 | JOHNSON-R-NJDE 000680 |
| 2/27/26 | Payment Confirmation posted 11/17/25 | JOHNSON-R-NJDE 000681 |
| 2/27/26 | Payment Confirmation posted 12/9/25 | JOHNSON-R-NJDE 000682 |

DM798688 v.3

*Exhibit B*                                                                                                 *Appx.017*

# Ownership Structure



**Caroline Tower**

**To:**          David Skeels
**Subject:**    RE: Potential Conference [Cadence et al. v. Bridgelink et al.]

**From:** David Skeels
**Sent:** Monday, February 16, 2026 11:26 PM
**To:** 'Andrew Korn' <andrew@receiverandrewkorn.com>; Robert A. Simon <rsimon@whitakerchalk.com>; Caroline Tower <ctower@whitakerchalk.com>
**Cc:** Bonnie Peck <bpeck@whitakerchalk.com>
**Subject:** RE: Potential Conference [Cadence et al. v. Bridgelink et al.]

Mr. Korn,

We are working to create a Sharefile link so that you will have access to all of the documents we previously produced to the Judgment Creditors and to the prior Receivers. We have also gathered additional documents to produce once we get them bates-numbered.

To briefly address a few of your inquiries below …

1. Demand No. 1 (2/5/26): "Notice to Cole Wayne Johnson of [alleged] failure to comply with the Receivership Order" re $163 held by comptroller. We have proposed to pay that amount rather than going through the Comptroller's office. We have not heard back from you on that proposal. So, my client has been working to research that issue and to pursue those funds from the Comptroller. We have some documentation to that effect and would like to know what sort of documentation you would find to be satisfactory.

2. Demand No. 2 (2/6/26): "Notice to Cord Henry Johnson of [alleged] failure to comply with the Receivership Order" re Cord's and Cassie's vehicles. We have provided information on the three vehicles you referenced. Please let us know whether that is sufficient (as to the two Kias) and how you propose we proceed in regards to the pickup truck. Let's discuss on Tuesday.

3. Demand No. 3 (2/9/26): "[alleged] Violation of Charging Order, Demand for Delivery of distributions made after October 22, 2025 by LLCs".  We respectfully disagree with your characterization of those transactions as "distributions" or "disguised distributions." But, per my email of 2/11/26, we look forward to discussing those issues with you and to getting additional feedback regarding the types of information and documentation you would like to see in an accounting of those transactions.

4. Demand No. 4 (2/11/26): Receiver's Levy. Please note that no judgment debtors own stock in Bimergen.

5. Demand No. 5-1: "Vehicles owned or leased by Judgment Debtors Cole Johnson and Cord Johnson" requesting delivery of horse trailers and Ford F-150 and additional information about the F-150. We previously disclosed and specifically identified the horse trailers as exempt assets in an index that was timely provided to the previous Receivers. Please see attached and let us know if you wish to discuss further.

6. Demand No. 5-2: "Depositions of Spouse and Girlfriend" … we are happy to discuss.

7. Demand No. 5-3: "Ridglea Country Club" … Cole Johnson does not have an equity membership. Happy to discuss further.

1

*Exhibit C*                                    *Appx.019*

8. Demand No. 5-4: "Notice to Recurring Creditors" … We previously produced a list of other litigations, though Cole and Cord individually were not defendants or individual debtors in all of those actions. We are working to identify that bates-numbered document and to create a list of creditors of Cole and Cord Johnson. I'm not exactly sure what you mean by "recurring creditors" … but if you can explain that term, I expect we can get you a list.

Finally, we wanted to make sure you were aware of Cord Johnson's recent testimony about the structure of, and the relationships between, the Judgment Debtors and the NJDEs. To that end, please see the attached Response (ECF No. 287 … particularly pages 5-7) and the appendix filed in support thereof (ECF No. 288 … particularly the excerpts from Cord Johnson's deposition at Ex. A and Exhibits A-4, A-5, A-6, A-7, and B thereto). This material and additional context may prove useful in our discussion tomorrow.

Respectfully,

**DAVID SKEELS** | Member
Whitaker Chalk Swindle & Schwartz PLLC
817.878.0573 Direct

2

*Exhibit C*                                                    *Appx.020*

### List of Cole W. Johnson's Tangible Personal Property, Exemptions Claimed, and Non-Debtor, Ashley McCormick's Personal Property

**Cole W. Johnson**

| Property | Estimated Fair Market Value | Exemption Claims |
|---|---|---|
| One bed | $400 | Tex Prop. Code Section 42.002 |
| Computer and screens | $250 | Tex Prop. Code Section 42.002 |
| Two firearms: 9 mm handgun and .45 caliber handguns | $750 each ($1,500) | Tex Prop. Code Section 42.002 |
| Gym equipment and weights | $1,000 | Tex Prop. Code Section 42.002 |
| Books | $100 | Tex Prop. Code Section 42.002 |
| Wearing apparel, including clothes, shoes, boots, hats, and belt buckles | $1,000 | Tex Prop. Code Section 42.002 |
| Provisions for consumption | $300 | Tex Prop. Code Section 42.002 |
| One bottle of Crown Royal in Black Box | $250 | |
| One horse (quarter horse) | $2,500 | Tex Prop. Code Section 42.002 |
| Two Saddles, saddle bags, bridles, spurs, and tack | $1,500 | Tex Prop. Code Section 42.002 |
| Two injured cows | $1,000 each ($2,000) | Tex Prop. Code Section 42.002 |
| One calf | $300 | Tex Prop. Code Section 42.002 |
| Letter and pictures of family | $50 | Tex Prop. Code Section 42.002 |
| Set of golf clubs and bag | $500 | Tex Prop. Code Section 42.002 |
| Horse Trailer | $5,000 | Tex Prop. Code Section 42.002 |
| Apple watch | $500 | Tex Prop. Code Section 42.002 |
| Cell phone | $200 | Tex Prop. Code Section 42.002 |
| **Total** | **$17,350** | |

**Ashley McCormick (Non-Judgment Debtor)**

| Property | Status |
|---|---|
| Woman's Jewelry and Jewelry Box | Property of Non-Debtor |
| Two full sets of bedroom furniture including TV stand, dressers, and side table | Property of Non-Debtor |
| Side table and TV stand in third bedroom | Property of Non-Debtor |
| All towels, linens, pillows, blankets | Property of Non-Debtor |
| Wearing apparel, shoes, boots, hats | Property of Non-Debtor |

1

*Exhibit C*                                                                                          *Appx.021*

| | |
|---|---|
| Entryway table | Property of Non-Debtor |
| All cowhide rugs | Property of Non-Debtor |
| Table and chairs in office | Property of Non-Debtor |
| Two leather couches | Property of Non-Debtor |
| Leather armchairs | Property of Non-Debtor |
| Leather recliner | Property of Non-Debtor |
| Gym free weights | Property of Non-Debtor |
| Exercise mat and yoga mat | Property of Non-Debtor |
| Kayak and paddle | Property of Non-Debtor |
| Paddle board | Property of Non-Debtor |
| Dining room table and chairs | Property of Non-Debtor |
| Foot stool and coffee table | Property of Non-Debtor |
| Dishes, cups, cookware, flatware | Property of Non-Debtor |
| Two dogs (pets) | Property of Non-Debtor |
| John Deer Tractors and implements | Property of Non-Debtor |
| Brush hog large mower | Property of Non-Debtor |
| Zero turn mower and weed eaters | Property of Non-Debtor |
| All tools on the property | Property of Non-Debtor |
| Horse gear, including buckets, hoses, grooming tools, horse blankets, and panels for pens | Property of Non-Debtor |
| Saddles, pads, bridles, halters | Property of Non-Debtor |
| Yamaha Viking ATV | Property of Non-Debtor |
| Ashley's personal car (Dodge Charger) | Property of Non-Debtor |
| Firearm (Smith & Wesson 9 mm) | Property of Non-Debtor |
| Horses affiliated with Ashley's job and client horses under her care | Property of Non-Debtor |
| Animal food for livestock | Property of Non-Debtor |
| 3 miniature cows | Property of Non-Debtor |
| Set of golf clubs and bag | Property of Non-Debtor |
| Laptop computer, briefcase, and printer | Property of Non-Debtor |
| Two sets of washers and dryers | Property of Non-Debtor |
| Decoration for house | Property of Non-Debtor |
| Books | Property of Non-Debtor |
| Letters, cards, photographs | Property of Non-Debtor |
| Two dogs | Property of Non-Debtor |
| One cats | Property of Non-Debtor |
| Cell phone | Property of Non-Debtor |
| Starlink Internet connection | Property of Non-Debtor |

DMS 798993

*Exhibit C*                                                      *Appx.022*

List of Cord H. Johnson's Tangible Personal Property, Exemptions Claimed,
and Spouse's Personal Property

**Cord H. Johnson**

| Property | Estimated Fair Market Value | Exemption Claims |
|---|---|---|
| Four Beds | $150 each ($600) | Tex Prop. Code Section 42.002 |
| Two couches | $250 each ($500) | Tex Prop. Code Section 42.002 |
| Four nightstands | $100 each ($400) | Tex Prop. Code Section 42.002 |
| Dining room table and four chair | $400 | Tex Prop. Code Section 42.002 |
| Breakfast table and chairs | $200 | Tex Prop. Code Section 42.002 |
| Coffee table | $100 | Tex Prop. Code Section 42.002 |
| Books | $250 | Tex Prop. Code Section 42.002 |
| Bibles | $100 | |
| Art as home furnishing | $250 | Tex Prop. Code Section 42.002 |
| Silverware | $250 | Tex Prop. Code Section 42.002 |
| Plates, cups, glasses cookware | $150 | |
| Towels, linens, bedspreads | $150 | |
| Freezer | $150 | Tex Prop. Code Section 42.002 |
| Wearing apparel, including clothes, shoes, boots and hats | $1,000 | Tex Prop. Code Section 42.002 |
| Provisions for consumption | $200 | Tex Prop. Code Section 42.002 |
| Desk and chair | $500 | Tex Prop. Code Section 42.002 |
| Gym equipment | $250 | Tex Prop. Code Section 42.002 |
| Two horses | $1,000 (each) | Tex Prop. Code Section 42.002 |
| Two saddles and tack for horses | $2,500 | Tex Prop. Code Section 42.002 |
| Horse Trailer | $5,000 | Tex Prop. Code Section 42.002 |
| Cell Phone | $200 | Tex Prop. Code Section 42.002 |
| Two (2) Firearms, hunting rifle and pistol | Rifle $1,500 Pistol $500 | Tex Prop. Code Section 42.002 |
| Coat rack | $200 | Tex Prop. Code Section 42.002 |
| Table in entryway | $100 | Tex Prop. Code Section 42.002 |
| Golf clubs and bags for Cord and five-year old daughter | $750 | Tex Prop. Code Section 42.002 |
| Mini-refrigerator | $50 | Tex Prop. Code Section 42.002 |
| Three Televisions | $150 each ($450) | Tex Prop. Code Section 42.002 |
| Wedding Band | $500 | Tex Prop. Code Section 42.002 |
| Toolbox (not power tools) | $100 | Tex Prop. Code Section 42.002 |
| Printer for computer | $100 | Tex Prop. Code Section 42.002 |
| **Total** | **$19,400** | |

1

*Exhibit C*                                                    *Appx.023*

**Cassie Johnson (Non-Judgment Debtor)**

| Property | Status |
|---|---|
| Woman's Jewelry | Separate Property |
| Piano | Separate Property |
| Wood chest | Separate Property |
| Carved wooden bull | Separate Property |
| Firearms | Separate Property |
| File cabinet | Separate Property |
| Washer and dryer | Separate Property |
| Computers | Separate Property |
| Three horses | Separate Property |
| Five saddles and tack for horses | Separate Property |
| Horse Trailer | Separate Property |
| Pictures on the wall | Separate Property |
| Picture of Grandpa's Red Barn | Separate Property |
| Television | Separate Property |
| Cell phone | Separate Property |
| Golf clubs and bag | Separate Property |
| Wearing apparel, boots, hats | Separate Property |
| Two dogs (pets) | Separate Property |

DMS 798936

2

*Exhibit C*                                    *Appx.024*

## List of Cord H. Johnson's Tangible Personal Property, Exemptions Claimed, and Spouse's Personal Property

**Cord H. Johnson**

| Property | Estimated Fair Market Value | Exemption Claims |
|---|---|---|
| Four Beds | $150 each ($600) | Tex Prop. Code Section 42.002 |
| Two couches | $250 each ($500) | Tex Prop. Code Section 42.002 |
| Four nightstands | $100 each ($400) | Tex Prop. Code Section 42.002 |
| Dining room table and four chair | $400 | Tex Prop. Code Section 42.002 |
| Breakfast table and chairs | $200 | Tex Prop. Code Section 42.002 |
| Coffee table | $100 | Tex Prop. Code Section 42.002 |
| Books | $250 | Tex Prop. Code Section 42.002 |
| Bibles | $100 | |
| Art as home furnishing | $250 | Tex Prop. Code Section 42.002 |
| Silverware | $250 | Tex Prop. Code Section 42.002 |
| Plates, cups, glasses cookware | $150 | |
| Towels, linens, bedspreads | $150 | |
| Freezer | $150 | Tex Prop. Code Section 42.002 |
| Wearing apparel, including clothes, shoes, boots and hats | $1,000 | Tex Prop. Code Section 42.002 |
| Provisions for consumption | $200 | Tex Prop. Code Section 42.002 |
| Desk and chair | $500 | Tex Prop. Code Section 42.002 |
| Gym equipment | $250 | Tex Prop. Code Section 42.002 |
| Two horses | $1,000 (each) | Tex Prop. Code Section 42.002 |
| Two saddles and tack for horses | $2,500 | Tex Prop. Code Section 42.002 |
| Horse Trailer | $5,000 | Tex Prop. Code Section 42.002 |
| Cell Phone | $200 | Tex Prop. Code Section 42.002 |
| Two (2) Firearms, hunting rifle and pistol | Rifle $1,500 Pistol $500 | Tex Prop. Code Section 42.002 |
| Coat rack | $200 | Tex Prop. Code Section 42.002 |
| Table in entryway | $100 | Tex Prop. Code Section 42.002 |
| Golf clubs and bags for Cord and five-year old daughter | $750 | Tex Prop. Code Section 42.002 |
| Mini-refrigerator | $50 | Tex Prop. Code Section 42.002 |
| Three Televisions | $150 each ($450) | Tex Prop. Code Section 42.002 |
| Wedding Band | $500 | Tex Prop. Code Section 42.002 |
| Toolbox (not power tools) | $100 | Tex Prop. Code Section 42.002 |
| Printer for computer | $100 | Tex Prop. Code Section 42.002 |
| **Total** | **$19,400** | |

*Exhibit C*                                    *Appx.025*

**Cassie Johnson (Non-Judgment Debtor)**

| Property | Status |
|---|---|
| Woman's Jewelry | Separate Property |
| Piano | Separate Property |
| Wood chest | Separate Property |
| Carved wooden bull | Separate Property |
| Firearms | Separate Property |
| File cabinet | Separate Property |
| Washer and dryer | Separate Property |
| Computers | Separate Property |
| Three horses | Separate Property |
| Five saddles and tack for horses | Separate Property |
| Horse Trailer | Separate Property |
| Pictures on the wall | Separate Property |
| Picture of Grandpa's Red Barn | Separate Property |
| Television | Separate Property |
| Cell phone | Separate Property |
| Golf clubs and bag | Separate Property |
| Wearing apparel, boots, hats | Separate Property |
| Two dogs (pets) | Separate Property |

DMS 798936

2

*Exhibit C*                                    *Appx.026*

Cause No. DC-09-00877

| | | |
|---|---|---|
| The Colony Assets Development, L.L.C., Plaintiff/Judgment Creditor, | § § § § | |
| v. | § § | In the District Court |
| American National Development, L.P., Bibold American Development, L.L.C., and William "Bill" Baldwin, Defendants/Judgment Debtors. | § § § § § | 134th Judicial District Dallas County, Texas |

## ORDER GRANTING RECEIVER'S MOTION FOR SANCTIONS AGAINST JUDGMENT DEBTOR WILLIAM "BILL" BALDWIN

The Court has considered Receiver's *Motion for Sanctions against Judgment Debtor William "Bill" Baldwin* (the "Motion"). Respondent Judgment Debtor William "Bill" Baldwin ("Baldwin") had fair and due notice of the Receiver's allegations and a reasonable opportunity to respond them. Having taken judicial notice of its file in this Case; the evidence admitted, the Court finds that good cause exists to impose sanctions against Baldwin. Therefore, the Court grants the Motion as ordered below.

## Findings & Conclusions

Accord James N. Gray Co. v. Armtek Sys., Inc., 2006 U.S. Dist. LEXIS 2516, at *9 (E.D. Ky. Jan. 24, 2006) (Courts normally expect defendants to pay any judgment without the Plaintiff having to resort to asset discovery); accord Denton v. Denton, 147 So. 2d 545, 547 (Fla. App. 1962) ("The plaintiff as well as the defendant must honor the orders and judgments of the court…")

Order Sanctioning William "Bill" Baldwin                                    Page 1 of 16

**Exhibit D**                                                                *Appx.027*

Nevertheless, Baldwin refused to make a voluntary payment on the September 14, 2011, *Final Default Judgment Against Defendants Pursuant to Rule 215.2(B)(5) Tex.R.Civ.Pro* (the "Judgment") until the Receiver and law enforcement officers appeared at Baldwin's residence on February 21, 2023,[1] with the power and authority the Court provided through the February 1, 2023, *Order Authorizing Use of Reasonable Force*. Baldwin initially resisted the Receiver's attempt to levy property inside the residence, contending that the Judgment was not against him, but only the corporate entity judgment debtors.

The Court's *Order for Turnover Relief* and *Order Appointing Receiver* required Baldwin to turnover documents, cash, and property to the Receiver. During the time of the Receivership, right up through the date of the hearing on the Motion, Baldwin:

- operated businesses under the assumed names, Baldwin Excavation, Bill Baldwin Construction, and Texas Premier Pool. The *Order Appointing Receiver* required Baldwin to:

  > Provide all documents and records of every kind or character showing all business holdings, partnerships (general, limited 0r otherwise), sole proprietorships, trust, corporations, joint ventures and any other business organizations of every kind in which judgment debtor is a partner or has an interest and **any and all assumed name certificates under which judgment debtor has done or is doing business.**

---

[1] After receiving the benefit of forbearance from the Receiver, Baldwin now contends that the $4,000 payment he authorized around March 6, 2023, was "coerced." *See Motion to Stay* at p. 2 (Receiver "coercing Respondent into permitting cashing of a $4,000.00 post dated check in exchange for an additional 30 days to delay any further collection").

*Exhibit D*                                                            *Appx.028*

Although Baldwin had responsive documents in his possession, custody, or control regarding Baldwin Excavation, Bill Baldwin Construction, and Texas Premier Pool, Baldwin refused to provide them as ordered.

- had documents in his possession, custody, or control responsive to both the *Order for Turnover Relief* and the *Order Appointing Receiver*. However, Baldwin refused to turn those documents over to the Receiver as ordered by the *Order Appointing Receiver*. For example, Baldwin had possession, custody, or control of monthly statements for his accounts at Commercial Bank of Texas, N.A., but never provided them to the Receiver.

- had cash owned by him and refused to turn it over to the Receiver. For example, on February 21, 2023, Baldwin had at least $26,000.00 in his home that he had not previously turned over to the Receiver, as ordered by the *Order Appointing Receiver*.

- had money of at least $108,814.86 paid to him in 2022 by Pool Quest, LLC, but failed to turnover any of it to the Receiver, as ordered by the *Order Appointing Receiver*.

- between January 16, 2023 – February 13, 2023, had over $18,210.63 pass through one of his bank accounts at Commercial Bank of Texas, N.A., but failed to turn over this money as ordered by the *Order Appointing Receiver*. This constitutes a crime.[2]

- On February 21, 2023, Baldwin had access to five motor vehicles parked at Baldwin's residence, including a 2022 Ford Super Duty F250 titled in Baldwin's name and financed in Baldwin's name. Therefore, Baldwin owned motor vehicles without providing any promissory notes, documents of title, or contracts as ordered by the *Order Appointing Receiver*. Baldwin was also required by the *Order Appointing Receiver* to:

---

[2] *In re Sobczak-Slomczewski*, 2014 Bankr. LEXIS 3371, at *47-49 (Bankr. N.D. Ill. Aug. 5, 2014) (Exercising control of account with knowledge that a Receiver was in place was both larceny and embezzlement).

*Exhibit D*                                                                                  *Appx.029*

Provide documents and records of every kind and character showing all personal property in which judgment debtor has and had an Interest in the State of Texas, the United States of America or any other place.

Baldwin had possession, custody, or control of these documents, but failed to turn them over as required by the *Order Appointing Receiver*.

- failed and refused to turnover any of the documents and financial records requested by Receiver Andrew R. Korn, as he was required to do pursuant to the *Order Appointing Receiver*. Baldwin had possession, custody, or control of these documents. Moreover, Baldwin never sought relief from the obligation to produce these documents by contending that he did not have possession, custody or control of them, or that no such documents existed.

- failed to claim and turnover property held for him by the Texas Comptroller.

None of these failures and refusals were excused. The Court finds that each of the acts and omissions identified above was knowing, intentional, deliberate, and the result of a strategic choice by Baldwin to impede collection of the Judgment against Baldwin.

By refusing to turnover to the Receiver:  1) money and property that could have been used to satisfy the Judgment; and 2) documents reasonably related to locating assets or fraudulent transferees of assets for purposes of recovering money or property to satisfy the Judgment, Baldwin sought to defeat – and actually impeded and hindered – the purposes of the turnover receivership in this Case. *See generally,* Hittner, *Texas Post-Judgment Turnover and Receivership Statutes*, 45 Tex. B.J. 417,

Order Sanctioning William "Bill" Baldwin                                    Page 4 of **16**

**Exhibit D**                                                                        *Appx.030*

418 (1982) (Purpose of the turnover statute is to provide ability to get to all property the judgment debtor may own). Baldwin's willful disobedience of both the *Order Appointing Receiver* and the *Order for Turnover Relief* thwarted the Court's efforts to aid the Judgment Creditor satisfy the Judgment. *In re Bradberry*, 2012 Tex. App. LEXIS 6501, at *2-3 (Tex. App.—Tyler Aug. 8, 2012, orig. proceeding) ("A judgment creditor is entitled to assistance from a court of appropriate jurisdiction to reach property to obtain satisfaction of a judgment... A turnover order is one means of providing such assistance."). Baldwin's refusal to the produce documents required by the *Order Appointing Receiver* and the *Order for Turnover Relief* has also prejudiced the Receiver's efforts to find additional property owned by the Judgment Debtor. From just the limited documents the Receiver was able to obtain by redirecting Baldwin's mail, the Court sees that Baldwin is obtaining significant income from sources that are still unidentified.

Enforcing judgments is a core function of a trial court. *Dallas County Constable Precinct 5 v. KingVision Pay-Per-View, Ltd.*, 219 S.W.3d 602, 610 (Tex. App.—Dallas 2007, no pet.). Enforcing orders is a core function of a trial court. *Darnell v. Broberg*, 565 S.W.3d 450, 460 (Tex. App.—El Paso 2018, no pet.). The purpose of a turnover receivership is to assist the Court in enforcing judgments.[3]

---

[3] *See Evans v. Frost Nat'l Bank*, 2015 Tex. App. LEXIS 8391, at *10-11 (Tex. App.—Dallas Aug. 11, 2015, no pet.) (Citations omitted) ("Generally speaking, the purpose of Section 31.002, otherwise known as the Turnover Statute, is to aid the collection of final money judgments. The

Order Sanctioning William "Bill" Baldwin                                    Page 5 of 16

Therefore, Baldwin's acts and omissions identified above significantly interfered with the Receiver's efforts to locate, levy, and sell property to satisfy the Judgment. Baldwin's continual stonewalling the Receiver is a significant interference with enforcement of the Judgment in this Case.

"In exercising its discretion in choosing the appropriate sanction, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but can consider everything that has occurred during the history of the litigation." *Overstreet v. Home Indemnity Co.*,747 S.W.2d 822, 826 (Tex. App.—Dallas 1987, writ denied). Baldwin hindered and impeded other officers of the Court before and during the appointment of the Receiver. For example, Baldwin would not allow the deputy constable to levy on Baldwin's property to satisfy the Judgment, leading to a *Nulla Bona* Officer's Return. Baldwin refused to voluntarily comply with his duties to respond to post-judgment discovery, resulting in orders compelling him to do so. On July 14, 2014, when asked whether he understood that his refusal to answer deposition questions might result in the costs of further discovery being assessed against him, Baldwin responded: "Do whatever you want to do, it doesn't

turnover statute describes the authority and means by which a judgment creditor may obtain, through the aid of the court, a judgment debtor's property to assist in fulfilling the judgment."). *Accord Bear, Stearns & Co. v. Amad*, 919 F.2d 920, 921 (5th Cir. 1990) ("The primary purpose of the Turnover Statute is to allow, as an additional and cumulative method to aid... satisfaction of the judgment.").

*Exhibit D*                                                                                          *Appx.032*

matter to me." Baldwin has no fear, respect, or regard for the Court's rules, authority, or ability to punish Baldwin.

Baldwin's willful disobedience of either the *Order for Turnover Relief* or the *Order Appointing Receiver* supports the sanctions imposed against Baldwin in this Order. The Court is of the opinion it could impose more stringent and punitive sanctions against Baldwin. The harsher sanctions are justified because the Court does not believe that the sanctions imposed in this Order are sufficient to convince Baldwin to comply with the *Order for Turnover* Relief or the *Order Appointing Receiver*. But the Receiver made a modest request under the circumstances, after attempting to convince Baldwin to voluntarily comply with the Orders of the Court and mitigate the harm caused by Baldwin's contempt.

As can be seen by the Court's admonishments, Baldwin has a chance to avoid harsher sanctions and incarceration by complying with the Court's *Order for Turnover Relief* and *Order Appointing Receiver*.

Baldwin's refusal to comply with the Court's *Order for Turnover Relief* and *Order Appointing Receiver* has kept the Receiver from having evidence that tends to prove or disprove Baldwin's recent contentions that third parties own: 1) personal property in Baldwin's residence; and 2) personal property Baldwin uses. By refusing to provide documents to the Receiver related to these contentions, Baldwin

Order Sanctioning William "Bill" Baldwin

*Exhibit D*      *Appx.033*

has significantly interfered with the Court's ability to: 1) hear evidence on the contentions raised by Baldwin; 2) decide issues of fact raised by Baldwin: and 3) decide questions of law related to ownership. These are all core functions of the Court. *Dallas County Constable Precinct 5 v. KingVision Pay-Per-View, Ltd.*, 219 S.W.3d 602, 610 (Tex. App.—Dallas 2007, no pet.) (Core functions of the Court include "hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law."); *Grayson v. Westwood Bldgs. L.P.*, 859 S.E.2d 651, 669 (Va. 2021) ("A court may find a conveyance fraudulent when an insolvent debtor retains indefinite, exclusive possession or de facto ownership of the conveyed assets…")

Baldwin's failure to produce any documents about his property, including the documents requested by the Receiver, the Court finds that Baldwin's documents would have disproved any contentions Baldwin could make to exclude any money or property from levy or sale by the Receiver.[4]

---

[4] *See J&J Sports Prods., Inc. v. Sandoval*, Civil Action No. 5:08-cv-00377-HLH (W.D. Tex. Feb. 10, 2010) (Hudspeth, J.) (Doc. 56 Memorandum Opinion, p. 5) ("[Defendant]admitted that she refused to execute a release which would have permitted the Plaintiff to access the records of cable and satellite television providers in the San Antonio area. Her refusal permits the inference that she feared the discovery of evidence contradicting her denials."); *Carillo v. Schneider Logistics, Inc.*, 2012 U.S. Dist. LEXIS 26927, *25-26 (C.D. Cal. 2012) ("Schneider has refused to produce the actual videotape of the October 19 meeting, to which Hedges acknowledged that Schneider has access. Schneider's refusal to produce the videotape raises the inference that plaintiffs' characterization of what Hedges said at the meeting is accurate, and that Schneider's characterization is not."); *See generally, Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (Adverse inference when party fails to produce relevant evidence within its control); *Cf. Andrews v. Tex. Dep't of Health*, 2007 Tex. App. LEXIS 1129 (Tex. App.—Austin Feb. 15, 2007, no pet.)

Order Sanctioning William "Bill" Baldwin                                    Page **8** of **16**

The trial judge "has inherent power to sanction to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the court's administration of its core functions, including hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgment, and enforcing its judgments. For a court to invoke its inherent power to sanction, there must be evidence and findings that the alleged bad faith abuse significantly interfered with the court's legitimate exercise of one of its core powers[.] Due process limits a court's inherent power to sanction and the sanctions must be just. Whether an imposition of sanctions is 'just' is measured by two standards: first, the sanctions that the court imposes must relate directly to the abuse found and, second, the sanctions must not be excessive." *McCafferty v. McCafferty*, 2017 Tex. App. LEXIS 6907, at *19-20 (Tex. App.—Dallas July 24, 2017, no pet.) (Citations omitted). Like the respondent in *McCafferty*, Baldwin's "persistent disregard" of the Receiver's authority under the Receivership Order interfered with the Court's administration of its core functions. Therefore, this

---

("When a party with special knowledge of a disputed issue fails, without explanation, to testify about that issue, a judge may infer that the party knew its testimony would not support its claim.").

Order Sanctioning William "Bill" Baldwin

Page **9** of **16**

*Exhibit D*                    *Appx.035*

Court has inherent power to sanction Baldwin's conduct to deter, alleviate, and counteract Baldwin's bad faith[5] abuse of the judicial process.

The Court cannot be expected to function if those who come before it disregard its judgments and decrees. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (In order for a court to function successfully it must be able to: 1) manage its proceedings, 2) vindicate its authority, and 3) effectuate its decrees). Once an order has been signed, "courts are not reduced to 'hoping for compliance.'" *United States v. City of Jackson*, 318 F. Supp. 2d 395, 418 (S.D. Miss. 2002). Therefore, the Court is required to punish Baldwin for willfully disobeying the *Order for Turnover Relief* and *Order Appointing Receiver* and refusing to comply them. *See Staples v. State*, 260 S.W. 641, 645 (Tex. Civ. App. 1924, orig. proceeding) (Courts "are ever zealous in preserving due respect for all of its orders"). The Court has a duty to vindicate its dignity and authority. *See In re Aimster Copyright Litig.*, 2003 U.S. Dist. LEXIS 6270, at *19 (N.D. Ill. 2003) ("Defendants violated this Court's Preliminary Injunction Order. That violation must be addressed and vindicated.").

---

[5] *In re Hecker*, 264 Fed. Appx. 786, 791 (11th Cir. 2008) (internal quotations omitted) ("A party demonstrates bad faith by delaying or interrupting the litigation or by hampering enforcement of a court order.").

*Exhibit D*                                                                 *Appx.036*

The legitimate purposes of sanctions are threefold: 1) to secure compliance; 2) to deter other litigants from similar misconduct; and 3) to punish violators. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex. 1992); *Cire v. Cummings*, 134 S.W.3d 835 (Tex. 2004) (Sanctions are used to punish those who violate the rules); *Johnson v. Chesnutt*, 225 S.W.3d 737, 742 (Tex. App.—Dallas 2007, pet. denied) ("Sanctions serve a variety of purposes, including the compensation of a party for past prejudice or punishment and deterrence of bad faith conduct."); *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 662 (Tex. App.—Dallas 2005, pet. denied) (One of the purposes of sanctions is to deter those who "might be tempted" to do the same thing "in the absence of a deterrent"). Each of the following warrant significant monetary and non-monetary[6] sanctions against Baldwin:  1) Complete refusal to comply with the *Order for Turnover Relief* and *Order Appointing Receiver*; 2) casual attitude about disobeying the *Order for Turnover Relief* and *Order Appointing Receiver*; 3) lack of remorse; and 4) stonewalling. *Frank v. Frank*, 1999 U.S. Dist. LEXIS 7998 at *12 (S.D.N.Y. May 25, 1999) (Recommending sanctions because respondent "has been cavalier in his approach to the litigation and has sought to manipulate the system to delay resolution of this matter."); *In re Fretter, Inc.*, 219 B.R. 769, 780 (Bankr. N.D. Ohio 1998) ("In considering the appropriate sanctions

---

[6] *Cire v. Cummings*, 134 S.W.3d 835, 841 (Tex. 2004) (Plaintiff's actions and statements made it clear that monetary sanctions would not be effective); *Masi v. Steely*, 242 F.R.D. 278, 286 (S.D.N.Y. 2007) (Monetary sanction meaningless when Defendant never intends to pay).

for Strobl & Borda's non-disclosure, the Court deems significant the Firm's casual attitude toward the disclosure requirements…); *Jabary v. McCullough*, 325 F.R.D. 175 (E.D. Tex. 2018) (Respondent's statements warranted monetary and non-monetary sanctions when Respondent "did not apologize for making the statements or even admit they were disrespectful."); *cf. Fudali v. Pivotal Corp.*, 2010 U.S. Dist. LEXIS 127055, at *8-9 (D.D.C. Dec. 2, 2010) (Defendant's "arrogant attitude" towards the judgment is a cause for "great concern."); *Integrated Control Sys. v. Ellcon-National, Inc.*, 2003 U.S. Dist. LEXIS 25310, at *6 n.5 (D. Conn. Aug. 17, 2003) ("This Court expects the complete cooperation [in] collection efforts and will respond harshly to any actions perceived as stonewalling...").

The *Order Appointing Receiver* requires Baldwin to: 1) deliver money and property to the Receiver to be applied to the balance of the Judgment; and 2) turnover documents about Baldwin's assets.[7] Baldwin's failure to do either – when Baldwin had money to pay, personal property should have been delivered, and relevant financial documents to produce – is evidence of bad faith. *In re Hecker*, 264 Fed. Appx. 786, 791 (11th Cir. 2008) (internal quotations omitted) ("A party

---

[7] *See James N. Gray Co. v. Armtek Sys., Inc.*, 2006 U.S. Dist. LEXIS 2516, at *9 (E.D. Ky. Jan. 24, 2006) (Courts normally expect defendants to pay any judgment without the Plaintiff having to resort to asset discovery); *accord Denton v. Denton*, 147 So. 2d 545, 547 (Fla. App. 1962) ("The plaintiff as well as the defendant must honor the orders and judgments of the court…"); *cf. Integrated Control Sys. v. Ellcon-National, Inc.*, 2003 U.S. Dist. LEXIS 25310, at *6 n.5 (D. Conn. Aug. 17, 2003) ("This Court expects the complete cooperation of plaintiff in defendant's collection efforts and will respond harshly to any actions perceived as stonewalling…").

Order Sanctioning William "Bill" Baldwin

*Exhibit D*                                                    *Appx.038*

demonstrates bad faith by delaying or interrupting the litigation or by hampering enforcement of a court order."); *Western Atlas International, Inc. v. Randolph*, 2005 Tex. App. LEXIS 2199, at *20 (Tex. App.—Corpus Christi-Edinburg Mar. 24, 2005, no. pet.) ("The record supports the trial court's finding that appellees acted in bad faith. Appellees made no apparent effect effort to provide complete answers or requests for written discovery or to update opposing counsel when they became aware of new contact information."); *Haeger v. Goodyear Tire and Rubber Co.*, Civil Action No. CV-05-02046-PHX-ROS, *Order* at p. 60 [Doc. 1073] (D. Ariz. Nov. 8, 2012) ("[Defendant and Counsel] decided to make no effort to provide responsive documents. That decision is evidence that [Defendant and Counsel] were not operating in good faith.").

The *Order for Turnover Relief* requires Baldwin to turnover - before September 6, 2016: 1) certain tangible and intangible personal property to the Dallas County Sheriff for the satisfaction of the Judgment; and 2) documents about this personal property. Baldwin's failure to do either – when Baldwin had some of the personal property identified to turnover and had relevant financial documents to produce as required by the *Order for Turnover Relief* – is evidence of bad faith.

Baldwin should be sanctioned for acts of contempt because it was shown - by clear and convincing evidence - that: (1) court orders were effect (the *Order for Turnover Relief* and the *Order Appointing Receiver*); (2) these court orders required

Order Sanctioning William "Bill" Baldwin                                      Page **13** of **16**

*Exhibit D*                                                                        *Appx.039*

specified conduct by Baldwin; 3) these orders are clear and unambiguous; (4) Baldwin failed to comply with these orders; and 5) Baldwin did not attempt to comply in a reasonable manner. To the contrary, the contemptuous actions and omissions the Receiver complains about and are identified in this Order *supra*, were all committed by Baldwin willfully. *See Wright v. E-Systems, LLC*, 2016 U.S. Dist. LEXIS 19616, at * 6 (N.D. Tex. January 27, 2016.) (Tolliver, Mag.) Adopted by, Motion granted by *Wright v. E-Systems, LLC*, 2016 U.S. Dist. LEXIS 19204 (N.D. Tex., Feb. 17, 2016); *See, e.g., Okada v. Whitehead*, 2017 U.S. Dist. LEXIS 178836, at *12 (C.D. Cal. July 28, 2017) (Failing to hand over bank records to Receiver is a contempt); *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189 (Tex. App.—Houston [14th Dist.] 2017, pet denied) (Finding respondent in contempt for, inter alia, failing to notify the receiver of the existence of property); *In re Fitzgerald*, 429 S.W.3d 886, 890 (Tex. App.—Tyler 2014, Orig. proceeding) (Refusing to vacate an Order of contempt for violating the court's order compelling production of documents).

Failure to respect and obey orders of the Court undermines the Judiciary at the most fundamental level.[8]

---

[8] *See ACLI Gov't Sec., Inc. v. Rhoades*, 989 F. Supp. 462 (S.D.N.Y. 1997) ("Continued contempt of court is a public offense that undermines the efficiency, authority and purpose of the judicial branch."); *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995) (Identifying the "the fundamental importance of safeguarding popular confidence in the integrity of the legal system").

Order Sanctioning William "Bill" Baldwin                    Page **14** of **16**

Judgment enforcement is a "complex field" of law. *Middleton v. Green Cycle Hous., Inc.*, 2017 U.S. Dist. LEXIS 25627, at *25 (S.D.N.Y. Feb. 22, 2017). Considering the Lodestar factors, the Court finds that the Receiver's hourly rate of $600.00 per hour for the legal work relating to the preparation and presentation of the Motion is a reasonable hourly rate in the Dallas Market for the services involved in preparing and presenting the Motion. The court finds that six hours spent preparing the Motion, proposed order, a preparing for and attending the hearing was reasonable and necessary. Additionally, the Court takes judicial notice that $3,600.00 is a reasonable fee for the preparation and presentation of the Motion.

<u>Sanctions</u>

The Court imposes the following sanctions against Baldwin:

- The following facts and legal determinations are established for purposes of this Case:

    - Baldwin owns no property exempt from execution or levy, whether under the Texas Property Code or otherwise.

- Baldwin is prohibited from opposing any request by the Receiver to sell property levied on by the Receiver.

- As sanctions to compensate the Receivership for attorney's fees relating to the Motion, Baldwin will pay Receiver $3,600.00 for reasonable attorney's fees relating solely to the presentation and prosecution of the Motion for Sanctions. Within 21 days from the date this Order is signed, Baldwin will unconditionally deliver the $3,600.00 to Receiver Andrew R. Korn, at 4221 Avondale Avenue, Dallas, Texas 75219. Payment must be made by Cashier's Check. This fee award is stayed upon timely direct appeal of this Order until the jurisdiction of the Court reviewing this Order expires. If Baldwin is

*Exhibit D*                                                                 *Appx.041*

unsuccessful on his appeal of this Order, Receiver recovers an additional $14,400.00 for reasonable and necessary appellate attorney's fees.

- Baldwin will perform a minimum of 120 hours community service (within a period of 3 months or less from the date this Order is signed, with at least 8 hours spent each week until completed) at a facility in Dallas County (such as the Dallas Animal Services Main Location and Adoption Center, 1818 N. Westmoreland Road, Dallas, Texas 75212), or alternatively, as community service is performed as part of sentencing in criminal cases in Dallas County, Texas; or alternatively, as otherwise determined by the Court. Receiver will confer with Baldwin's attorney in charge about presenting an agreed order as to where Baldwin's community service will occur and any schedule for same; Within 7 days from when this Order is signed, Baldwin and Receiver will present an agreed order, or alternatively, their separate proposed orders on the specifics of how Baldwin will complete his 120 hours of community service.

- Baldwin is reprimanded for his: 1) abuse of the judicial process; 2) disrespect for the dignity and authority of the Court; and 3) lack of remorse and casual attitude about complying with court orders.

- Baldwin is admonished that should he commit any further misconduct in this Case, more stringent sanctions will likely be imposed on him, including punishment for contempt by a sentence of confinement in the Dallas County Jail.

These sanctions are measured but intended to be meaningful. These sanctions relate directly to the abuse found and are not excessive.

SO ORDERED.

SIGNED on this ___28th___ day of April, 2023, at Dallas, Texas.

_____
PRESIDING JUDGE

*Exhibit D*                                                          *Appx.042*